[Crim. No. 668.   Department One. — March 22, 1901.]

## THE PEOPLE, Respondent, *v.* SAMUEL M. FINDLEY, Appellant.

CRIMINAL LAW — TRIAL — BIAS OR PREJUDICE OF JUDGE — CONSTRUCTION OF CODE — SUFFICIENCY OF AFFIDAVIT. — Under subdivision 4 of section 170 of the Code of Civil Procedure, in order to obtain the change of the judge before whom a criminal case is to be tried, it is not sufficient that the affidavit of the defendant should state simply that the defendant " believes that he cannot have a fair and impartial trial " before the judge, by reason of his bias or prejudice, but it must be made to appear from the facts stated in the affidavit or affidavits on file, to the satisfaction of a reasonable mind, that a fair trial cannot be had before the judge about to try the case, by reason of the bias or prejudice of the judge.

ID. — INSUFFICIENT SHOWING — FACTS NOT SHOWING BIAS OR PREJUDICE. — Facts stated in the defendant's affidavit, — that the defendant was a successful candidate for office against a relative of the judge; that the judge withdrew his consent to reduce the bail of the defendant without giving any reason therefor; that, the insanity of the defendant having been set up as a defense, the judge stated in the hearing of the jury that he had never had any doubt of defendant's sanity, the affidavit not showing what called forth the statement; and that the judge denied him a foreign subpœna, without any showing that he took the requisite steps to obtain one, — are not sufficient to establish the bias or prejudice of the judge.

ID. — PRESUMPTION — PROPER STATEMENT AS TO DEFENDANT'S SANITY — DEMAND FOR SPECIAL JURY. — In the absence of a showing to that effect, it will be presumed that the remark of the judge in relation to the defendant's sanity was not made without any call for it, but was properly made in response to a demand made for a trial of the defendant's insanity before a special jury. If the defendant did not wish the trial jury to hear the judge's response, he should have requested the court to direct the jury to retire while the question was being considered and passed upon.

ID. — DECISION OF JUDGE UPON QUESTIONS OF FACT — REVIEW UPON APPEAL. — The statute leaves the hearing of a motion to change the judge for bias and prejudice, preventing a fair and impartial trial, to the judge of the court in which it is made, and his decision on the questions of fact before him should be treated the same as the decision of a court on any other question of fact, and will not be interfered with on appeal, unless it is plainly contrary to the evidence.

ID. — EMBEZZLEMENT BY TAX-COLLECTOR — EVIDENCE — PAYMENT BY SURETY ON OFFICIAL BOND. — Under an indictment charging em-

bezzlement of county funds by a tax-collector, where there was evidence tending to show that there was a shortage of funds to be accounted for after a surety on his bond had made a large payment into the county treasury, evidence of such payment is admissible for the purpose of showing how the money so paid got into the treasury, and that it was not paid in by the defendant.

Id. — Limitation of Evidence not Requested — Objection upon Appeal. — The payment by the surety, into the county treasury, on the official bond of the defendant, being properly admissible, if the defendant failed to object that he was not bound by the acts of third parties, and did not request any limitation of the evidence as to the payment made by such surety, the defendant cannot be heard to complain on appeal, for the first time, that it was not limited.

Id. — Insanity as the Result of Drink — Instructions — Temporary Insanity — Presumption of Continuance. — Where there was evidence as to the drinking habits of the defendant for many years prior to the alleged embezzlement, under a plea of insanity as the result thereof, at the time of the offense, it was proper to instruct the jury that settled insanity produced by long-continued intoxication affects responsibility in the same way as insanity produced by any other cause; but that it must be settled insanity, and not merely a temporary mental condition, produced by recent use of intoxicating liquor; that there is no presumption of the continuance of prior temporary or spasmodic insanity down to the specific time of the criminal act; and to establish a basis for the presumption of the continuance of insanity, it must appear to have been of such duration and character as to indicate the probability of its continuance, and not simply the possibility, or even probability, of its recurrence.

Id. — Reasonable Doubt — Refusal of Requested Instruction. — Where the rules as to the degree of proof required in criminal cases, and the doctrine of reasonable doubt, were fully stated and explained to the jury, a requested instruction, that, "in weighing the evidence to determine whether there is a reasonable doubt of the defendant's guilt, you have the right to consider that innocent men have been convicted, and to consider the danger of convicting innocent men," was properly refused. Such requested instruction contains matter more appropriate to the argument of counsel than to the instructions of the court.

Id. — Misconduct of Jury — Impeaching Verdict — Defendant's Affidavit — Information and Belief. — The verdict of a jury cannot be impeached in this state by the affidavits of jurors showing misconduct on the part of any member of the jury, except where the verdict is reached "by a resort to the determination of chance." Nor can the verdict be impeached by the hearsay statements of jurors; and an affidavit of the defendant as to the misconduct of the jury, based on information and belief, is entitled to no weight.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.   E. P. Unangst, Judge.

The facts are stated in the opinion.

J. M. Emmert, and Charles A. Palmer, for Appellant.

Tirey L. Ford, Attorney-General, and Henry A. Melvin, for Respondent.

GRAY, C.— The defendant was convicted of embezzling eight thousand dollars, public money in his hands as tax-collector of San Luis Obispo County, and sentenced to eight years in the state prison.   He appeals from the judgment of conviction.   We will consider the points urged for reversal in the order in which they appear in appellant's brief.

1. When this case was called for trial, defendant's attorney, pursuant to the provisions of section 170 of the Code of Civil Procedure, moved the court to secure the services of some judge, other than the regular judge of the court, to preside at the trial and in the subsequent proceedings.   The affidavit of the defendant was filed and read in support of this motion. The affidavit of the district attorney in rebuttal was also filed and read on the motion.   The court denied the motion.

In his affidavit, defendant alleges five acts of the judge of the trial court as tending to show his prejudice against defendant.   These acts are as follows: 1. The said judge, in December, 1897, advocated the candidacy of his brother-in-law for tax-collector, as against defendant's candidacy for the same office, before the board of supervisors, and defendant received the appointment, much to the displeasure of said judge.   2. That said judge had consented to a reduction of defendant's bail from ten thousand to six thousand dollars, and then withdrew said concession, without assigning any reason therefor.   3. That after a former trial of this case and a disagreement of the jury, the Evening Breeze, a newspaper of San Luis Obispo, published an editorial, criticising and deriding the defendant and the disagreeing jury, and intended to prejudice the public mind against defendant. Defendant says he verily believes that a bias exists in the mind of said judge against defendant, or otherwise the proprietor, editor, or manager of said paper would have been cited to show cause why he should not be punished for

contempt. 4. That, at a former trial of the case, after defendant's counsel had made his opening statement to the jury, said judge, "in an audible voice, and within hearing of the jury, said substantially that he had never had any doubt as to the sanity of the defendant, to which remark defendant's counsel then and there duly excepted." 5. That, prior to the first trial, said judge, at request of the prosecution, issued a foreign subpœna for one John C. Fraser, and notwithstanding the failure of service in this state on said Fraser, he was served in Denver, Colorado, and attended as a witness, and said judge illegally ordered a warrant drawn on the county treasurer in Fraser's favor for $184.45, in payment of his traveling expenses from Denver, Colorado, to San Luis Obispo and return. That defendant requested a foreign subpœna for one Berry, the auditor of the Fidelity and Deposit Company, a material witness for defendant, and said judge refused the order.

It is not sufficient, in a case of this kind, to allege in the affidavit simply that the defendant "believes that he cannot have a fair and impartial trial," etc., but it must be made to appear by the affidavit or affidavits on file that a fair trial cannot be had before the judge about to try the case, by reason of the bias and prejudice of such judge. (Code Civ. Proc., sec. 170, subd. 4.) The affidavit or affidavits must not only state facts, but the facts stated must establish to the satisfaction of a reasonable mind that the judge has a bias or prejudice that will in all probability prevent him from dealing fairly with the defendant. We are unwilling to think that a trial judge would be prejudiced, within the meaning of the statute cited, against one on trial before him, on account of his successful candidacy for office against a relative of such judge.

The withdrawal of the consent to reduce bail without giving any reason therefor simply amounted to a refusal to reduce the bail. We cannot say that the bail was excessive under all the circumstances of the case, and on the question under consideration no importance can be attached to the action of the court in this regard.

Insanity being set up as a defense, if the judge had wantonly, and without any occasion for it, announced in the presence of the jury that he had never had any doubt as to defendant's sanity, this might indicate that he was not disposed to give the defendant a fair trial; but the affidavit does

not give us the full proceedings in reference to this matter; it does not state what was said by defendant's counsel, in his opening statement or elsewhere, to call forth any remark from the court as to the sanity of defendant. The exact language of court and counsel was undoubtedly taken down by the court reporter at the time, and this, or its substance, should have been presented at the hearing of the motion. In the absence of a showing to that effect, it will not be presumed that the court made the remark without any call for it. The only proper occasion, that occurs to us, that the court would have to announce that he never had any doubt as to defendant's sanity would be in response to a suggestion on the part of defendant's attorney that his client was then insane, and a demand that the question of his then present sanity be tried before a jury called specially for that purpose, in accordance with the provisions of section 1368 of the Penal Code. It would be no evidence of prejudice in the judge, for him to declare, in response to a demand of this nature, that he had no doubt as to the sanity of defendant; and if counsel desired that the declaration should not be made in the presence of the jury, he should not call for the ruling in their presence, but should request the court to direct them to retire.

As to the denial of a foreign subpœna, there is nothing in defendant's affidavit to show that he ever filed with the judge an affidavit, or took the requisite steps to entitle him to a foreign subpœna. (Pen. Code, sec. 1330.) A mere request was not sufficient to entitle the defendant to a foreign subpœna.

The other allegations of defendant's affidavit are not of sufficient importance to require special notice.

We deem it sufficient, under this head, to say, in conclusion, that the statute (Code Civ. Proc., sec. 170) leaves the hearing upon a motion of this kind to the judge in whose court it is made, and consequently his decision on the questions of fact before him should be treated the same as the decision of a court on any other question of fact, and we can interfere with it on appeal only when it is plainly contrary to the evidence. After a careful consideration of the affidavits used on the hearing, we cannot say that the trial court was not warranted in denying the motion. (*Higgins* v. *San Diego*, 126 Cal. 303, 312.)

2. It appears that the Fidelity and Deposit Company of Maryland was surety on defendant's official bond as tax-

collector; and at the trial the prosecution introduced evidence, in the way of checks and the indorsements thereon, to show that said surety had paid to the county $8,246.50, presumably on account of defendant's defalcation. The defendant objected to these checks as evidence, on the ground that they were "incompetent, immaterial, and irrelevant for any purpose in the case." The prosecuting attorney said, "We will show its connection." The overruling of the objection is assigned as error. It appears, subsequently in the trial, that the expert accountants who figured out the shortage in the tax-collector's office found and testified that there was a shortage of $3,040.49, after crediting the $8,246.50 which was paid into the county treasury by the bond company. The defendant having been indicted for embezzling $8,000, to prove the crime as charged it was proper to show how this item of $8,246.50 got into the treasury, and that it was not paid in by the defendant; for this purpose, at least, the evidence objected to was pertinent and proper. But the defendant now urges that this evidence of transactions between third parties could not bind the defendant; and its admission must have raised a presumption in the minds of the jury, that because this money was paid in by the bond company, therefore the defendant was short in his accounts with the county. At the trial, no objection of this nature was made; if such an objection had been made, it would have been in order for the court to limit the admission of the evidence to its legitimate purpose, and in the absence of any request that it be in any way limited, on appeal the defendant cannot be heard to complain that it was not limited.

The other exceptions of appellant to the rulings of the court in receiving and rejecting evidence are without merit, and are not of a nature to require further discussion.

3. The theory of the defense seems to have been that defendant was insane at the date of his alleged offense, November 18, 1898, and that such insanity was due, in part at least, to a long-continued over-indulgence in intoxicating liquors. Defendant's wife testified as follows: "During October and November, 1898, he would often bring home a quart of liquor daily for days at a time, and he would frequently use a quart in one day; during July, 1898, he drank some liquor, but not so bad as in August; and in August, 1898, he drank less liquor than in October and November; after October 1, 1898, I do not

think he was ever sober; before he went away he had acted very strangely several days; his talk was silly, and he seemed to be in great mental distress; I was afraid he would carry out threats of suicide, if not watched carefully."

There was much other testimony given on behalf of defendant as to his drinking habits for many years before the date of the alleged crime, as well as immediately prior to said date. In this condition of the evidence, the court instructed the jury as follows: —

"Settled insanity produced by a long-continued intoxication affects responsibility in the same way as insanity produced by any other cause. But it must be settled insanity, and not merely a temporary mental condition produced by recent use of intoxicating liquor.

"When temporary or spasmodic insanity is proved to have existed prior to the commission of a criminal act, there is no presumption of its continuance down to the specific time of the criminal act. To establish the basis of a presumption that insanity, once shown to have existed, continues to exist, it must appear to have been of such duration and character as to indicate the probability of its continuance, and not simply the possibility or even probability of its recurrence."

The contention of defendant, that these instructions were misleading, confusing, and inapplicable to any evidence in the case, cannot be upheld. The first instruction quoted is copied from the opinion of the court in *People* v. *Travers*, 88 Cal. 239, and in speaking of it further in said opinion, the court expressly approves of it as an instruction when there is evidence to which it will apply. In the case at bar it applies to the evidence already quoted.

The second instruction quoted is equally free from error. The last sentence of it is quoted from *People* v. *Schmitt*, 106 Cal. 48, 54, wherein the principle set forth in the instruction is clearly approved. The instruction is also applicable to the facts presented in evidence on behalf of defendant.

It was proper for the court to give the instruction as to the law making it the duty of the tax-collector to settle with the auditor on the first Monday of each month for all moneys collected, and to pay the same to the county treasurer. This instruction did not stand alone, but was accompanied by other instructions, one of which was to the effect that a felonious intent was a necessary element of the crime of embezzlement.

The rules as to the degree of proof required in criminal cases were fully stated in the instructions, and the doctrine of "reasonable doubt" was fully elucidated to the jury. It was not necessary, therefore, that the court should give to the jury defendant's requested instruction 23, which reads as follows:—

"In weighing the evidence to determine whether there is a reasonable doubt as to the defendant's guilt, you have the right to consider that innocent men have been convicted, and to consider the danger of convicting innocent men."

Besides, the instruction contains matter more appropriate to the argument of counsel than to the instructions of the court.

4. It is the settled law of this state that the verdict of a jury cannot be impeached by the affidavits of jurors showing misconduct on the part of any member of the jury, except where the verdict is reached "by a resort to the determination of chance." (Code Civ. Proc., sec. 657.) Nor can a verdict be impeached by the hearsay statements of jurors regarding such misconduct. (*People* v. *Azoff*, 105 Cal. 632.) It is equally clear that defendant's affidavit as to the misconduct of the jury, based as it is solely on information and belief, is entitled to no weight. There was no competent or proper evidence of misconduct of the jury laid before the court, and the court very properly refused to grant a new trial.

The judgment should be affirmed.

Cooper, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.        Garoutte, J., Van Dyke, J., Harrison, J.