. WILLIAM R. SAVEALL *vs.* LUDGER J. DEMERS & others.

Worcester. September 23, 1947. — December 1, 1947.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Picketing. Unlawful Interference. Actionable Tort. Constitutional Law, Freedom of speech. Equity Pleading and Practice, Decree, Appeal.*

There was unjustified, unlawful and tortious conduct not protected by the constitutional right to freedom of speech where a union of journeymen barbers, composed partly of proprietors of one-man shops having no employees and partly of employees of master barbers, by means of pickets bearing signs reading "This barber shop unfair to organized labor," in combination peacefully picketed another one-man barber shop having no employees for the purpose of compelling the proprietor thereof, who was not a member either of the union or of a master barbers' association, to raise his prices to a standard set by the master barbers' association and approved by the union.

An amendment to an order for decree in a suit in equity so as to include costs was not appealable as a decree although entitled as an interlocutory decree.

BILL IN EQUITY, filed in the Superior Court on December 10, 1946.

The suit was heard by *O'Brien*, J. Following the judge's "Findings of Fact and Order for Decree,"; there was an "Interlocutory Decree amending Findings of Fact and Order for Decree," whereby it was "ordered, adjudged and decreed" that the order be amended by adding a provision

for costs; and a final decree. The defendants appealed from the purported "Interlocutory Decree" and from the final decree.

*W. R. Donovan*, for the defendants.

*W. I. Shattuck, Jr.*, for the plaintiff.

QUA, C.J. The Superior Court, by its final decree, permanently enjoined the defendants, officers and members of International Journeymen Barbers Union of America, Local 284, from picketing the plaintiff's shop in Fitchburg and interfering with his business. The defendants appeal.

The trial judge found these facts: The plaintiff owns and operates a barber shop. He has no employees and performs all the necessary labor himself. In 1946 the union had about forty members of whom twenty-six, or more than half, were, like the plaintiff, owners of shops and employed no one. The remaining members were employees of master barbers. The plaintiff was not a member of the union. There was also an association of master barbers, all of whose employees were members of the union. The plaintiff was not a member of this association. Prior to 1941 the price for cutting hair in shops owned by members of the master barbers' association was fifty cents. The plaintiff charged the same price. Some time between 1941 and 1946 the master barbers' association advanced the price in the so called "union shops" to seventy-five cents and on April 2, 1946, again advanced the price to $1. The union approved this last advance on April 12, and it became effective on April 14. The plaintiff continued to charge fifty cents. Several months later the union requested the plaintiff either to join the union or to raise his price "to a fair level." The plaintiff refused to join or to change his price. Thereafter, on November 7, the union voted to picket the plaintiff's shop until he raised his price for cutting hair to $1. Beginning November 12, two pickets at a time walked back and forth on the public sidewalk in front of the plaintiff's shop from nine in the morning until six in the evening, each carrying a sign reading, "This barber shop unfair to organized labor. The Fitchburg Barbers Union." "There was no disturbance or violence or

threat or forceful interference with customers." Picketing was discontinued pendente lite upon the filing in this suit of a stipulation wherein the plaintiff waived any claim for damages.

The judge also found that there was no lawful trade dispute and no labor dispute between the plaintiff and the defendants or between the plaintiff and any person or persons; that the picketing was an unlawful violation of the plaintiff's right to conduct his business free from illegal interference; and that it would be continued unless enjoined.

The controversy in this case does not fall within the definition of a labor dispute contained in G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, and therefore the provisions of G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, relative to injunctions in labor disputes do not apply. No contention to the contrary is made. This is not a controversy between employer and employees or between employer interest and employee interest. The plaintiff and a majority of the defendants are proprietors of one-man barber shops and employ no one. Those of the defendants who are employees of master barbers are one stage farther removed from any direct interest in the prices charged by the plaintiff than are the defendants who are proprietors of shops, and such employees can have no greater rights than the proprietors have. The controversy may therefore be treated as one between a group of proprietors and a single proprietor who refuses to accept dictation from the group in the conduct of his own business.

The law has long been settled in this Commonwealth that intentional harm to the business of another like the harm caused by the defendants, acting in combination, to the business of the plaintiff is a tort unless justified as in the exercise of an equal and competing right, and that, in order to justify their conduct, the competing interest of the defendants must be direct and immediate and not indirect, remote or consequential. A multitude of cases might be cited for these propositions. A few of those which gave direction to

our law are *Carew* v. *Rutherford*, 106 Mass. 1, *Walker* v.
*Cronin*, 107 Mass. 555, *Sherry* v. *Perkins*, 147 Mass. 212,
*Vegelahn* v. *Guntner*, 167 Mass. 92, *Plant* v. *Woods*, 176
Mass. 492, *Berry* v. *Donovan*, 188 Mass. 353, and *Haverhill
Strand Theatre, Inc.* v. *Gillen*, 229 Mass. 413.   In the case
before us the plaintiff has an undoubted right to compete
with the defendants.   He may exercise that right by lower-
ing his charges or keeping them down.   It is because of the
existence and probable exercise of such a right, more than
for any other reason, that free competition is supposed to
be of benefit to the public.   The defendants, on their side,
have a right to compete with the plaintiff.   They may, for
example, reduce their charges, or do better or quicker work,
or make their shops more attractive, and so draw to them-
selves trade which might otherwise go to the plaintiff.   But
instead of competing by usual lawful methods they have
combined to put compulsion upon the plaintiff to increase
his charges to conform to theirs.   It does not appear that
by this means the defendants will get more patronage for
themselves or that such is their purpose.   So far as appears
the effect and purpose of their acts are merely to make it in
some unascertained degree easier for them to maintain
their $1 charge in Fitchburg.   The benefits of success to
them would be secondary and not direct.   It is not far from
the truth to say that they are not exercising their own
right to compete with the plaintiff but are trying to destroy
the plaintiff's right to compete with them.   And in any
event the course of decision in this Commonwealth would
not sanction as lawful a combination to picket a competitor
for the purpose of attempting to regulate the details of his
business.   This is an inevitable deduction from such cases as
*Burnham* v. *Dowd*, 217 Mass. 351, *Haverhill Strand Theatre,
Inc.* v. *Gillen*, 229 Mass. 413, *Folsom Engraving Co.* v.
*McNeil*, 235 Mass. 269, *Mechanics Foundry & Machine
Co.* v. *Lynch*, 236 Mass. 504, *New England Wood Heel Co.* v.
*Nolan*, 268 Mass. 191, *Yankee Network, Inc.* v. *Gibbs*, 295
Mass. 56, 60, *Simon* v. *Schwachman*, 301 Mass. 573, and
*Quinton's Market, Inc.* v. *Patterson*, 303 Mass. 315.   The
conclusion is unescapable that under the law of this Com-

monwealth as understood for many years the combination
of the defendants to picket the plaintiff for the purpose found
was unjustified and unlawful, and their conduct was a tort
for which damages could be recovered and against which an
injunction would issue.

The defendants, however, place their chief reliance upon
a series of recent decisions of the Supreme Court of the
United States to the effect that peaceful picketing is an
exercise of the constitutional right of free speech.[1] In the
present state of development of this principle it would serve
no purpose for this court to attempt a detailed review of
these cases. See Teller, Picketing and Free Speech, 56
Harv. L. Rev. 180; Dodd, Picketing and Free Speech: A
Dissent, 56 Harv. L. Rev. 513; Teller, Picketing and Free
Speech: A Reply, 56 Harv. L. Rev. 532; Jaffe, In Defence
of the Supreme Court's Picketing Doctrine, 41 Mich. L.
Rev. 1037.

If picketing is speech it is certainly also much more.
However peacefully it may be carried on, it possesses ele-
ments of compulsion upon the person picketed which bear
little relation to the communication to anyone of informa-
tion or of ideas. And resort is commonly had to it pre-
cisely because of these elements, which, much more than
any force of argument contained in it, give it the power it
possesses. To fail to recognize these facts is to put reality
aside. It would seem, therefore, that even if picketing is
constitutionally protected in its aspect as speech, it must,
because of its other aspects, be subject to some degree of
regulation as to circumstance, manner, and even object,
lest orderly existence be submerged in a flood of picketing
by groups of people, having no peculiar right of their own,
to make other people do what they do not wish to do and
as free men are under no obligation to do. If we are correct

---

[1] *Senn* v. *Tile Layers Protective Union*, 301 U. S. 468, 478.  *Thornhill* v.
*Alabama*, 310 U. S. 88.  *Carlson* v. *California*, 310 U. S. 106.  *Milk Wagon
Drivers Union of Chicago, Local 753* v. *Meadowmoor Dairies, Inc.* 312 U. S.
287.  *American Federation of Labor* v. *Swing*, 312 U. S. 321.  *Hotel & Restau-
rant Employees' International Alliance, Local No. 122* v. *Wisconsin Employ-
ment Relations Board*, 315 U. S. 437.  *Carpenters & Joiners Union of America,
Local No. 213* v. *Ritter's Cafe*, 315 U. S. 722.  *Bakery & Pastry Drivers &
Helpers Local 802 of the International Brotherhood of Teamsters* v. *Wohl*, 315
U. S. 769.  *Cafeteria Employees Union, Local 302* v. *Angelos*, 320 U. S. 293.

in supposing that the right to picket is subject, for the protection of paramount public welfare, to some balancing of the conflicting interests of the parties immediately involved, we have before us a case where, on the one hand, the contribution of the defendants' acts to the free interchange of thought in Fitchburg reaches the vanishing point, while on the other hand there is danger that the fundamental right of the plaintiff to work with his own hands to what he regards as his best advantage may be destroyed. And this is a case where, apart from the constitutional question, the defendants are guilty of a tort under State law. We are not convinced that their acts cease to be tortious because performed in part, but only in part, through the medium of words. If the defendants had insisted upon attaching their signs to the plaintiff's front door, we do not suppose that the right of free speech would have furnished a defence to the tort of trespass. If it be answered that free speech is possible without trespass, should it not also be held that the essentials of free speech are possible without destruction of other constitutional rights as fundamental to a free society as the right of free speech itself? Until we are more positively directed to the contrary we prefer to think so, at least in a case like this, where the defendants' method of speaking involves an otherwise unlawful combination for an unjustified objective and a form of compulsion which is not speech and which strikes directly at the basic right of a man to use his hands to earn his living. See *R. H. White Co.* v. *Murphy*, 310 Mass. 510, 518–522; *Fashioncraft, Inc.* v. *Halpern*, 313 Mass. 385, 390–391; *Colonial Press, Inc.* v. *Ellis*, 321 Mass. 495, 500–501.

No question has been raised as to the form of the final decree.

An amendment to the order for decree so as to include in the order costs to the plaintiff, although entitled as an interlocutory decree, was not appealable. *Graustein* v. *Dolan*, 282 Mass. 579, 583.

*Appeal from "Interlocutory Decree" dismissed.*

*Final decree affirmed with costs of appeal.*