[Civ. No. 13614. First Dist., Div. One. Nov. 15, 1948.]

A. V. RIVIELLO et al., Appellants, v. JOURNEYMEN BARBERS, HAIRDRESSERS AND COSMETOLOGISTS' INTERNATIONAL UNION OF AMERICA et al., Respondents.

Chauncey Tramutolo and Harold B. Lerner for Appellants.

Clarence E. Todd, Henry C. Todd and Gordon W. Malla-tratt for Respondents.

PETERS, P. J.—Plaintiffs, A. V. Riviello, Joe D. Riviello and Pat Augustine, own and operate as partners a barber shop in San Francisco. They work as barbers in their own shop, and, in addition, hire as assistants other barbers who are members of defendant local. The defendants are Local 148 of the Journeymen Barbers, Hairdressers and Cosmetologists' International Union of America, and its secretary-treasurer. Defendants have threatened to withdraw from plaintiffs' barber shop its union card, to withdraw its union

employees, and to picket unless plaintiffs agree to sign an agreement that would compel them to become nonactive members of the union. Plaintiffs brought a proceeding to restrain this threatened action and asked for a preliminary injunction. Defendants filed a counteraffidavit, and demurred. By minute order, the trial court first denied the application for a temporary injunction, and then sustained the demurrer with 10 days to "answer." The quoted word obviously was intended to mean "amend." The plaintiffs appeal from the order denying the application for the preliminary injunction. The appeal has been twice argued, and has been briefed and rebriefed. Many points have been discussed by counsel, but an examination of the record demonstrates that the focal point involved is whether the trial court abused its discretion in refusing to grant a preliminary injunction to restrain picketing aimed at compelling employers, who also work at the trade, to join the union as nonactive members. We have come to the conclusion that there was an abuse of discretion, and that the preliminary injunction should have been granted. In view of this conclusion, the evidence before the trial court must be discussed in detail.

The plaintiffs' complaint is verified, and, as such, must be treated as an affidavit in support of the application. (*Smith* v. *Stearns Rancho Co.*, 129 Cal. 58 [61 P. 662]; Code of Civ. Proc., § 527.) Defendants do not challenge this rule, but contend that, in this case, the averments of the complaint must be disregarded because a demurrer has been sustained. But the demurrer was sustained in the very order which first denied the preliminary injunction. Until the demurrer was sustained the complaint was before the trial court and obviously was considered by it. It is quite clear that the application for the preliminary injunction was denied, and the demurrer sustained on the theory that, under the facts before the court, including those alleged in the complaint, defendants had a lawful right to picket.

The complaint, after setting forth the facts in reference to the operation of the barber shop by plaintiffs as above set forth, avers that plaintiffs have operated their shop for 24 years; that they have a $10,000 investment therein; that their business produces to them an income of $14,000 yearly; that plaintiffs have always operated a union shop and employed as barbers members of defendant union; that they possess a union shop card issued by defendant union; that they have built up a large trade by reason of being a union shop; that

they have always maintained a union closed shop under agreements with defendant union; that there has been, and is, no dispute between plaintiffs and their employees or between the plaintiffs and the union over hours of work, wages or conditions of employment; that "defendants, without just or any cause, have threatened plaintiffs that, unless plaintiffs enter into a new agreement which contains among other things a clause providing that plaintiffs as employers must become nonactive members of said Union, said defendants will withdraw the union shop card from plaintiffs' shop, destroy their business and deprive them of same, and will consequently prevent journeymen barbers, now engaged by plaintiffs, from continuing in the employ of said plaintiffs, and defendants will picket and will, jointly, individually, collectively and in combination, wholly put a stop to plaintiffs' said business and deprive them of their goodwill, built-up business and customers."

Defendant Joseph H. Honey filed an affidavit in opposition. It is therein averred that there is a shop card agreement in existence between the parties governing the display of union cards, and this agreement is attached as an exhibit. There is no averment that plaintiffs have breached that agreement. It is next averred that defendants have proposed to plaintiffs a new collective bargaining agreement (the old one having expired March 1, 1947) which plaintiffs have refused to sign. There is no denial of plaintiffs' allegation that this agreement required plaintiffs to become nonactive members of the union. A copy of the new agreement is attached as an exhibit. Paragraph 1 of that proposed agreement requires that "all barbers working at the trade . . . shall be members in good standing" in the union. The constitution of the union and certain amendments thereto are likewise attached to the affidavit as exhibits. The pertinent provisions of the constitution are as follows:

Article VIII, section 3: "An employer shall be construed to be any person or persons who either owns or operates a barber or beauty shop and employs steadily one or more full-time barbers or beauty operators, provided, however, employers may become non-active members of the local and International Union if barbers or beauticians."

Article XVII, section 3, as amended in July of 1946: "Any member becoming an employer must continue as a non-active member of the local union so long as he works at the trade as a barber or beautician. . . . A proprietor, show owner, or

employer working at the trade and who has never been a member of this organization and who desires to operate a union shop must make application for membership.''

Under the provisions of article XVII, section 7, a non-active member is not entitled to a vote, is not entitled to a seat at meetings, is ineligible to any office in the local or international, and cannot be a delegate.

The counteraffidavit of defendants also avers that a Mr. Eisenberg, who is not a party to this action, has violated the standard hours of closing. On information and belief it is averred that plaintiffs are conspiring with and encouraging the violations by Eisenberg.

One of the plaintiffs filed a counteraffidavit averring that plaintiffs have always operated and maintained a closed union shop, and have always observed the rules of and agreements with defendant union. It is directly averred that plaintiffs are not conniving with or encouraging and have never connived with or encouraged Eisenberg or anyone else to violate the standard working condition rules of defendant.

This is a fair summary of the entire record. The averments in defendants' affidavit on information and belief as to what has transpired must be disregarded. ■ It is well settled that affidavits made upon information and belief as to facts that have transpired are hearsay and must be disregarded. (*Pelegrinelli* v. *McCloud River etc. Co.*, 1 Cal.App. 593 [82 P. 695] ; *People* v. *Findley*, 132 Cal. 301 [64 P. 472] ; see cases collected 1 Cal.Jur. p. 671, § 17.) The record shows, without contradiction, that plaintiffs are operators of a barber shop, are qualified barbers, and work at the trade and hire barbers who are members of defendant union. It also shows that plaintiffs have always maintained a union shop, and, until the agreement expired in March of 1947, have had a collective bargaining agreement with defendant union. It shows that the union has proposed a new agreement under the terms of which, when read with the constitution as amended, the plaintiffs as employer-barbers who work at the trade must join the union and become completely inactive members, without the right to vote, hold office, or participate in any of the union affairs. The union has threatened to withdraw the union card, and to picket, unless plaintiffs sign this agreement. It is this threatened action that the trial court refused to enjoin.

■ Apparently, in the trial court, the main question argued was whether a union lawfully may picket to compel

employers who work at the trade to become members of the union. That this was apparently true is indicated by the fact that in the first briefs submitted to this court that was the only main question argued. The trial court ruled that picketing for such a purpose was lawful, and denied the injunction. If that were the only point involved the trial court undoubtedly would have been correct. While section 921 of the Labor Code prohibits employees from attempting to compel an employer to join or refrain from joining an employer organization,[1] that is not the problem here under discussion. Here the agreement does not attempt to compel the employer to join an employer organization, but it attempts to compel such employer, who works at the trade in competition with union members, to join an employee organization. That is clearly a proper labor objective, and is for the ''mutual aid or protection'' of employees as provided in section 923 of the Labor Code, the section declaring the state policy on such questions. The effort to organize all barbers who work in the trade is clearly a legitimate interest of the barbers' union. It is evident that an employer-worker is in competition with all other barbers who are not employers. Without being subject to union sanctions for violating the wages, hours and conditions of employment imposed on union members, the employer-worker could gain a great advantage to the detriment of the union members.

There are several cases indicating that the attempt to unionize employers who are also workers at the trade is a lawful and proper labor objective. In *Bautista* v. *Jones,* 25 Cal.2d 746 [155 P.2d 343], the plaintiffs were independent distributors of milk. ''They employed no other persons and had no need for employees.'' (P. 747.) The Milk Drivers' Union proposed to these independent distributors that union members be hired to operate the trucks. The independent distributors refused to do this, but applied for union membership. The applications were denied. The union then threatened to strike, picket and boycott the brokers who sold the independent distributors milk unless such sales ceased. An

---

[1] See language, probably *dicta,* in *Shafer* v. *Registered Pharmacists Union,* 16 Cal.2d 379, 386 [106 P.2d 403], to the effect that employees may not lawfully seek to compel the employer to join or refrain from joining an employer organization; see, also, *McKay* v. *Retail Auto S. L. Union No. 1067,* 16 Cal.2d 311 at page 327 [106 P.2d 373], where it is stated: ''The attempt to induce an employer to become a member of an employers' association is not reasonably related to either the working conditions or the bargaining power of the union members and was plainly an unlawful object of concerted action on their part.''

injunction was sought and secured to prevent such threatened action. The Supreme Court affirmed mainly on the ground that the union had refused the self-employed distributors membership. At page 749 it is stated: "The businessman-worker operating in an industry or field in which he competes with organized workmen may likewise be subjected to the same means of persuasion as any other workman to join the union and conform to the conditions regulating union labor."

The court cited in support of the above quotation the case of *Cafeteria Emp. Union* v. *Angelos*, 320 U.S. 293 [64 S.Ct. 126, 88 L.Ed. 58]. In that case the plaintiffs owned and operated, without employee assistance, a cafeteria. The labor union sought to "organize" that cafeteria and engaged in picketing for that purpose. An injunction was sought and granted on the ground that such a dispute was not "a labor dispute." This judgment was affirmed by the appellate courts of New York, but reversed by the United States Supreme Court. In reversing the judgment the Supreme Court stated (p. 295): "The Court here, as in the Swing case, was probably led into error by assuming that if a controversy does not come within the scope of state legislation limiting the issue of injunctions, efforts to make known one side of an industrial controversy by peaceful means may be enjoined. But, as we have heretofore decided, a state cannot exclude workingmen in a particular industry from putting their case to the public in a peaceful way 'by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him.' [Citing *A. F. of L.* v. *Swing*, 312 U.S. at p. 326 [61 S.Ct. 568, 85 L.Ed. 855].]"

The Angelos case stands squarely for the principle that a union may picket lawfully to induce the operator or owner of a business, who works for himself, to join the union.

On the authority of the Angelos case the Supreme Court of Minnesota, in a case somewhat similar to the instant one, affirmed a denial of an injunction in *Coons* v. *Journeymen Barbers, etc. Union*, 222 Minn. 100 [23 N.W.2d 345]. There the same union here involved sought to compel the plaintiff, an operator of a one-man barber shop to join the union, and, when he refused, began to picket. Plaintiff sought to enjoin the picketing. The trial court refused to enjoin, and this action was affirmed by the Minnesota Supreme Court. The court discussed at length the holding of the Angelos case,

and concluded that such case stands for the principle that it was a lawful labor objective to attempt to compel an employer-worker to become a member of the union.

From these authorities, and the reasoning upon which they are based, it must be held that it does not violate the public policy of this state to attempt by picketing, or other lawful means, to compel an employer, who also works at the trade, to join the union of those whom he employs and with whom he works.

But, say the plaintiffs, if such is a lawful labor objective under state law, such actions are opposed to the national public policy as such policy is set forth in the Labor Management Relations Act [61 Stats. 136 et seq., 29 U.S.C.A. §§ 141-197]. (The Taft-Hartley Bill.)[1] The statute only applies and can only apply to business or industries engaged in interstate commerce. Insofar as intrastate matters are concerned, Congress has no power to settle the public policy of any state. That is elementary constitutional law. It is too clear to require further discussion that the barber business as here involved is a matter of intrastate and not of interstate concern.

The fact that it is lawful to picket to attempt to compel an employer who works at the trade to join the labor organization with which he is competing, does not, however, settle the present controversy. Here the record shows that the only type of membership offered to plaintiffs is a nonactive membership. The defendants propose to picket to try to compel plaintiffs to become entirely sterile members of the union, without the right of any voice in union affairs. If they join they will have neither the right of seat nor voice in local meetings, and will not have the right to hold any union office or the right to attend conventions as union delegates. Apparently, the only "right" they would possess would be the "right" to pay dues. If they should join the union under such circumstances they would thus become amenable to the rules and sanctions of the union without the right to participate in the proceedings by which such rules and sanctions are passed. A clearer case of attempting to create a discriminated against class of members cannot be imagined. This is the focal point in this case. While, as already pointed out, in this state it is lawful to attempt to "coerce

[1]Section 8(b)(4) of that statute (80th Congress, Public Law 101, ch. 120), prohibits labor organizations from engaging in concerted activities, the purpose of which is "forcing or requiring any employer or self-employed person to join any labor or employer organization."

peacefully'' an employer who works at the trade to induce him to join the union, it seems too clear to require lengthy discussion that such activity cannot be held to be lawful unless full membership in the union is offered. According to the uncontradicted evidence, these plaintiffs cannot remain in business unless they have a union card. The defendants are threatening to remove that card and to picket unless plaintiffs become nonactive members of the union. In other words, plaintiffs cannot earn a living at their trade unless they join the union, and, if they join, they become sterile members. That cannot and should not be held to be a proper and lawful labor objective.

That such actions are unlawful is clearly demonstrated by the reasoning of our Supreme Court in the recent, well-reasoned and unanimous decision in *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]. There the court held that a union had no lawful right to maintain both a closed shop agreement with employers and an arbitrarily closed or partially closed union membership. Therein the union sought to prevent Negro shipworkers from being retained in the employ of Marinship on the ground that the Negroes refused to join the union. The reason that the Negroes refused to join the union was that the only membership offered them was membership in an auxiliary branch of the parent union without the right to participate in the determination of union policies. The Supreme Court held that to offer such membership was a subterfuge—that in spite of such offer the union was maintaining an arbitrarily closed union, and that before the union could properly contend that it was not so operating it would have to offer full and complete membership to the discriminated against group. The *rationale* of that opinion is conclusive in this case. If it is not a lawful purpose to seek the membership of Negroes on a discriminatory basis, it is equally unlawful to seek to compel employers who work at the trade to join defendant union on a discriminatory basis.

Thus, it must be held that the objective sought by defendants is unlawful, and that the threat to picket to obtain such objective, is unlawful. The next question is, whether picketing for such an unlawful purpose should be enjoined. Defendants argue that, as long as picketing is peaceful and truthful, it cannot be enjoined regardless of the lawfulness of the object. Many cases are cited in support of the assertion that the right to picket is protected by the free speech provisions of the federal Constitution and will not be pro-

hibited, regardless of purpose, unless there is a "clear and present danger" to the public.[1] There has also been a great deal said on the subject by legal commentators.[2] No useful purpose would be served by discussing or attempting to clarify the apparently conflicting decisions in this field. The law and policy of California is clear. Picketing and other forms of economic pressure are permissible where the object sought to be attained is reasonably related to a legitimate and lawful interest of organized labor, and where such concerted action is carried out peaceably and honestly. But, where the purpose sought to be attained is unlawful, or carried out forcibly or untruthfully, the picketing or other form of concerted action should be enjoined. In *McKay* v. *Retail Auto. S. L. Union No. 1067*, 16 Cal.2d 311, 319 [106 P.2d 373], it was stated that "an intentional interference with the advantageous economic relations of others by the members of labor organizations is not tortious unless violence is used or the object sought to be accomplished has no reasonable relevance to labor conditions." In *Steiner* v. *Long Beach Local No. 128*, 19 Cal.2d 676 [123 P.2d 20], the majority of the court enjoined picketing accompanied with violence. At page 682 it is stated: "It is now settled law that workmen may lawfully combine to exert various forms of economic pressure upon an employer, provided the object sought to be accomplished thereby has a reasonable relation to the betterment of labor conditions, and they act peaceably and honestly." A very clear statement of the rule is to be found in *James* v. *Marinship Corp.*, 25 Cal.2d 721, 728 [155 P.2d 329, 160 A.L.R. 900], where it is stated: "It should be recognized at the outset that a union may use the various forms of concerted action, such as strike, picketing or boycott, to enforce an objective that is reasonably related

[1] See, for example: *Senn* v. *Tile Layers Union*, 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229]; *Thornhill* v. *Alabama*, 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Carlson* v. *California*, 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104]; *A. F. of L.* v. *Swing*, 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855]; *Drivers Union* v. *Meadowmoor Dairies*, 312 U.S. 287 [61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200]; *Cafeteria Union* v. *Angelos*, 320 U.S. 293 [64 S.Ct. 126, 88 L.Ed. 58]. But, see, *Hotel Employees' Local* v. *Board*, 315 U.S. 437 [62 S.Ct. 706, 86 L.Ed. 946]; *Bakery Drivers Local* v. *Wohl*, 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]; *Carpenters Union* v. *Ritter's Cafe*, 315 U.S. 722 [62 S.Ct. 807, 86 L.Ed. 1143].

[2] A few of these are Teller, "Labor Disputes and Collective Bargaining," volume 1, section 136, and Cumulative Supp. 1947, page 70; Dodd, "*Picketing and Free Speech: A Dissent*," 56 Harv.L.Rev. 513; Jaffe, "*In Defense of the Supreme Court's Picketing Doctrine*," 41 Mich.L. Rev. 1037; Armstrong, "*Where Are We Going With Picketing?*," 36 Cal.L.Rev. 1; anno. 174 A.L.R. 593.

to any legitimate interest of organized labor. [Citing cases.] It is equally well settled that the object of concerted labor activity must be proper and that it must be sought by lawful means, otherwise the persons injured by such activity may obtain damages or injunctive relief. [Citing cases.]

"Although recent decisions in the United States Supreme Court hold that a state cannot deprive labor unions of the right of free speech through peaceful picketing [citing cases], these decisions do not deny a state the power to protect against abuses of the right. . . . In *Dorchy* v. *Kansas*, 272 U.S. 306 [47 S.Ct. 86, 71 L.Ed. 248] . . . Mr. Justice Brandeis, speaking for the court, stated (p. 311): 'But a strike may be illegal because of its purpose, however orderly the manner in which it is conducted. To collect a stale claim due to a fellow member of the union who was formerly employed in the business is not a permissible purpose.' The Dorchy case has never been overruled and it has been cited with approval in two of the free speech decisions [citing the Thornhill and Ritter's Cafe cases, *supra*] . . . Thus a state may impose limitations upon picketing or other concerted action if the 'end sought' is not permissible under state law and public policy, though any such limitations are subject to review by the United States Supreme Court, and will be annulled if they unreasonably interfere with labor's right to publicize the facts of a labor dispute."

The case of *Park & T. I. Corp.* v. *International etc. of Teamsters*, 27 Cal.2d 599, 603 [165 P.2d 891, 162 A.L.R. 1426], reiterated the rule of the Marinship case that "the object of concerted labor activity must be proper and . . . must be sought by lawful means."

Finally, in *In re Blaney*, 30 Cal.2d 643 [184 P.2d 892], the case holding the so-called "hot cargo" law invalid, the following summary appears:

(P. 647): "The identification of the constitutional protection of the right of free speech, press and assembly, with the publicizing of labor disputes or problems through the medium of picketing, boycotting and otherwise, has been established. [Citing many cases.]"

(P. 648, after quoting from many of the cases cited, *supra*): "It has been indicated, however, that the protection afforded by the free speech guarantee of the right to publicize a labor dispute by picketing, boycotting or otherwise is not absolute or necessarily controlled by the clear and present danger

test. . . . And the purpose of the economic pressure and the means used to exert it must be lawful . . ."

In the present case, the uncontradicted facts show that the only dispute between the parties is in regard to plaintiffs' refusal to sign the new agreement proposed by defendants. The uncontradicted evidence shows that, if plaintiffs sign such agreement, they must join the union. The uncontradicted facts show that if they join the union they will become inactive members therein with no right to participate in union activities. Defendants admit that, to accomplish such purpose, they are threatening to and will, unless restrained, remove the union card from plaintiffs' shop and will picket and boycott such shop. We have held that such objective is not a proper labor objective, is unlawful, is violative of the public policy of this state, and should be enjoined. The only question left for determination is whether it was an abuse of discretion to deny the preliminary injunction.

It is, of course, elementary that the granting or denying of a temporary injunction rests in the sound discretion of the trial court to be exercised upon a consideration of all of the circumstances of the case, and that such discretion will not be reviewed on appeal except upon a showing of abuse. It is also the law that such "discretion, however, should be exercised in favor of the party most likely to be injured." (14 Cal.Jur. § 7, p. 180, at p. 183.) In the present case the evidence is uncontradicted. ▮ All the evidence tends to show that the preliminary injunction should have been granted, while there is no evidence at all to support the trial court's action. Moreover, it is obvious that the parties "most likely to be injured" are the plaintiffs. Withdrawal of the union card and picketing would ruin plaintiffs' business, while, if the injunction is granted, the defendant union will only be restrained from removing the card and from picketing until the case can be heard on its merits. Under the facts so far produced, the plaintiffs' right is clear, they will obviously suffer great damage if the injunction is denied, and defendants will suffer but slight damage, if any, if it is granted. There were no equities to balance. All the equities are in favor of plaintiffs. Under such circumstances, it must be held that it was an abuse of discretion to deny the application for the preliminary injunction. (*Isert* v. *Riecks*, 195 Cal. 569 [234 P. 371] ; *Ellis* v. *American Federation of Labor,* 48 Cal. App.2d 440 [120 P.2d 79].)

The order appealed from is reversed with instructions to the trial court to issue the preliminary injunction, and to take such further steps in reference to the pleadings as may be proper in the circumstances.

Ward, J., and Bray, J., concurred.