99 N.E.2d 782 (1951)
155 Ohio St. 573
FOUTTS
v.
JOURNEYMEN BARBERS, HAIRDRESSERS & COSMETOLOGISTS' INTERNATIONAL UNION OF AMERICA, LOCAL NO. 105, et al.
No. 32361.
Supreme Court of Ohio.
June 20, 1951.
*784 Edward S. Sheck, Robert E. Sheck and Raymond J. McGowan, all of Akron, for appellants.
Charles F. Schnee and Scott A. Belden, Akron, for appellee.
*785 TAFT, Judge.
The provisions of the 1936 agreement, under which plaintiff claims a right to continued use of the union shop card, negative the existence of that right in the instant case. In that agreement, he specifically agreed to comply with all conditions imposed in the rules governing shop cards printed on the back of the shop card, and agreed that the card should remain the property of the defendant, that it was loaned to the plaintiff only during such time as those conditions were fulfilled by the plaintiff, and that plaintiff would on demand peaceably allow the defendant union to remove the shop card from any point of display. Under the rules printed on the back of the shop card, the plaintiff was specifically required to abide by "laws * * * made in the future for the proper government of" such shop cards. If the plaintiff refuses to become a proprietor member of the defendant union, then admittedly he will not have complied with the provisions for government of shop cards contained in the union constitution as amended in 1948. Furthermore, under the rules printed on the back of the shop card, plaintiff specifically agreed "to peaceably give up said shop card * * * for any other cause when called upon to do so."
In order to hold that the plaintiff has any right, under the 1936 agreement, to continued use of the union shop card, it would be necessary to read something into his agreement with the union which is not there and which would be contrary to the express provisions of that agreement.
In order to sustain the plaintiff's claim that he has a right under the 1936 contract to continue to display the union shop card, the Court of Appeals held, in effect, that it was not proper and legal for the union to limit the use of its shop card to barber shops in which all who work as barbers are union members, where the necessary effect of such limitation will require the proprietor of a barber shop to become a member of the union with rights of membership inferior to those of employee members of the union. The Supreme Court of Georgia subsequently refused to be persuaded by that holding and rendered a decision for the union on substantially the same facts. Rainwater v. Trimble, 1950, 207 Ga. 306, 61 S.E.2d 420.
In the instant case, we do not deem it necessary to determine whether it is a proper and lawful labor objective to compel an employer, working in competition with his employees, to join the employees' union as an employer member with rights inferior to those of the employee members.
Where, as here, there is no contractual obligation to continue to recommend or approve the services of another, we know of no common-law or statutory principle of public policy which requires one, who is accustomed to recommend and approve the services of others, to continue to recommend and approve the services of someone whose services he no longer wishes to recommend or approve, regardless of the lack of merit in the reasons he may have for discontinuing his recommendation and approval of those services. There may be limitations on the right of such one to criticize the services which he no longer wishes to recommend and approve but there is certainly no limitation on his right merely to discontinue his recommendation or approval of those services.
Where one relies upon the recommendation and approval of another to build up his business without any agreement limiting the causes for which such recommendation and approval may be discontinued, such one necessarily runs the risk that such other may, without just cause, determine to discontinue such recommendation and approval.
Where picketing, a strike or a boycott against an employer by a union is involved, it may be appropriate to determine whether the object sought to be achieved by such union activity is legal and proper. Crosby v. Rath, 136 Ohio St. 352, 25 N.E.2d 934, certiorari denied, 312 U.S. 690, 61 S.Ct. 618, 85 L.Ed. 1126; Restatement of the Law of Torts, Section 775. However, where a union merely discontinues its recommendation or approval of an employer and is under no contractual obligation to *786 continue such recommendation or approval, it may discontinue such recommendation or approval for any reason. See Section 6226, General Code; Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S.W. 1018, 39 L.R.A.,N.S., 1203; annotation, 39 L.R.A.,N.S., 1190; Tracy v. Banker, 170 Mass. 266, 49 N.E. 308, 39 L.R.A. 508; 31 American Jurisprudence, 869, Section 84; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 499, 69 S.Ct. 684, 93 L.Ed. 834, 842; International Brotherhood of Teamsters v. Hanke, 339 U.S. 470, 474, 70 S.Ct. 773, 94 L.Ed. 995, 1001. Cf. Letts v. Kessler, 54 Ohio St. 73, 42 N.E. 765, 40 L.R.A. 177.
The display of the union shop card in the instant case is a representation by the plaintiff to his employees and to the public that the plaintiff is recommended by and has the approval of the defendant union. If the plaintiff is not so recommended and does not have that approval, then that representation is false. Such a false representation will necessarily tend to deceive the public and the employees of the plaintiff. In the instant case, if a court of equity enjoins the defendant union from removing its shop card when the defendant union no longer either recommends or approves the plaintiff, then that court will thereby enable the plaintiff to deceive the public.
Plaintiff has referred this court to a number of cases involving controversies similar to the controversy involved in the instant case. He concedes that two of those cases are contrary to the contentions which he is making in the instant case. Rainwater v. Trimble, supra; Coons v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local No. 31, 1946, 222 Minn. 100, 23 N. W.2d 345 (involving an injunction against picketing and not against removal of a shop card). Of the five cases which he claims support his position, it may be observed that only two represent decisions made by state courts of last resort. The other three are decisions by intermediate appellate courts such as our Court of Appeals.
In Saveall v. Demers, 1947, 322 Mass. 70, 76 N.E.2d 12, 2 A.L.R.2d 1190, the defendant union was enjoined from picketing the plaintiff's shop and interfering with his business on the ground that the objective sought to be achieved by such union activity was not lawful. As hereinbefore pointed out, where picketing by a union is involved, it may be appropriate to determine whether the objective sought to be achieved by such picketing is legal and proper. No picketing or threatened picketing is involved in the instant case. The Massachusetts case did not involve any question as to the right to display a union shop card or otherwise represent to the public that the shop operator was approved or recommended by the union. Likewise, that question was not involved in Wisconsin Employment Relations Board v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local 379B, 1949, 256 Wis. 77, 39 N.W.2d 725, 726, which dealt with a charge that the union "had engaged in unfair labor practices by picketing for the purpose of forcing the complainants to violate certain sections of" the Wisconsin statutes. There are not even any comparable statutory provisions in our state. Also, two of the cases decided by intermediate appellate courts do not in any way deal with the question of the right to display a union shop card. Purcell v. Journeymen Barbers & Beauticians International Union of America, Local 192-A, 1939, 234 Mo.App. 843, 133 S.W.2d 662, and Wisconsin Employment Relations Board v. Journeymen Barbers, Hairdressers & Cosmetologists International Union of America, Local 115 (Wis. Circuit Court 1950), 18 Labor Cases C.C.H., 77965, paragraph 65896.
In Riviello v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, 1948, 88 Cal.App.2d 499, 199 P.2d 400, 402, a preliminary injunction, against withdrawing a union card and picketing an employer's shop for the purpose of compelling the employer to join the employees' union with rights inferior to those of employee members, was issued on the ground that the purpose sought to be obtained was unlawful. In that case, the plaintiff's petition was treated as an affidavit in support of the allegations relied upon as grounds for the temporary injunction. The defendant's counter-affidavit apparently *787 admitted that there was a shop card agreement in existence between the parties governing the display of union cards. As the court observed in its opinion, "There is no averment that plaintiffs have breached that agreement." This may explain why most of the opinion is taken up with the problems of whether the objective sought to be achieved was unlawful and, if it was unlawful, whether the picketing could be enjoined. In any event, the little that was said, relative to an injunction against removing the union shop card, is not helpful in solving the specific problem which we believe is presented in the instant case.
Our conclusion is that the plaintiff is not entitled to the injunction which he sought and which was allowed by both the Common Pleas Court and the Court of Appeals.
The admissions of defendant union's answer indicate that its rules and regulations will require its members to leave the plaintiff's employment if the plaintiff does not join the defendant's union as a proprietor member. However, the plaintiff has not argued in this court that, if the equitable relief which he sought and was given by the judgment under review should be denied him, then he should be given some other relief from the enforcement of those rules and regulations. It may well be that, if plaintiff cannot have an injunction against removal of the shop card, then the refusal of union members to work for him will not, in and of itself, cause him any damage. Thus, it might be found from the admissions in the pleadings and the evidence in the record that the location of plaintiff's barber shop is such that, if plaintiff does not have the continued recommendation and approval of the defendant union indicated by the display of defendant's union shop card, the decrease in plaintiff's business will be such as to eliminate any necessity for hiring the assistant that he now employs. That being so, we express no opinion on the problem as to whether plaintiff would be entitled to any other relief in the instant case. The existence of that problem will depend upon findings of fact which it is not the province of this court to make. We believe the appropriate manner of determining, whether that problem exists and how it should be disposed of if it does exist, is to remand this cause to the Common Pleas Court which may then give the plaintiff an opportunity, if he so desires, to seek such other relief.
The judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for further proceedings.
Judgment reversed.
ZIMMERMAN, STEWART, MATTHIAS and HART, JJ., concur.
WEYGANDT, C. J., and MIDDLETON, J., dissent.
MIDDLETON, Judge (dissenting).
The real issue in this case does not involve the mere right to remove a so-called shop card which is the physical property of the defendant union. The real issue involves that which is symbolized by the removal of the shop card.
The plaintiff, Foutts, has operated a union barbershop since November 19, 1936. On that date he received the union shop card in question which symbolized his agreement with the union, a portion of which agreement required him:
"(a) To abide by the laws of the J. B. I. U. of A. governing shop cards and such laws as may be made in the future for the proper government of the same.
"(b) To abide by the laws of the local union, now and in the future, with reference to prices, hours, wages, etc., etc.
"(c) To peaceably give up said shop card on demand of the local union or local executive board through its duly appointed representative, for the violation of any local or international laws.
"(d) To peaceably give up said shop card to the general secretary-treasurer, or duly appointed representative, in case of the suspension or disbandment of the local union which issues it, or for any other cause when called upon to do so."
It may well be urged that under this agreement Foutts was required to conform to all reasonable and legal "laws" adopted by the union but the agreement would not *788 bind Foutts, for all time in the future, to abide by illegal enactments of the union or "laws" so unreasonable as not to have been within the contemplation of himself and the union at the time the agreement was made.
It is conceded that at all times since November 19, 1936, Foutts has conducted a union shop and has conscientiously observed all the rules, regulations and "laws" of the union with respect to employment, hours of labor, prices, rates of pay and all other features incident to the operation of a barbershop. Up to the time of the amendment of the constitution of the union by the union's national convention in September 1948, the union took no exceptions whatever to the conduct of Foutts or his right to be considered as a union shop operator.
Throughout the period from November 19, 1936, to September 1948, the constitution of the union denied Foutts the right of membership therein because he was a proprietor, as well as a barber, who worked with the tools of the trade. In September 1948, the union in national convention adopted comprehensive amendments to its constitution. By these amendments the union required Foutts, and all others similarly situated, to "join" the union and to hold a special type of membership described as "proprietor members." Such proprietor member is required by the amendments to pay regular monthly dues to the union but is declared "ineligible to vote on matters pertaining to wages, hours of labor, etc." It is further provided that he "shall also be ineligible to any office in the local or international union or to act as delegate or alternate to conventions." (Section 3, Article XVII.)
As a proprietor member of the union, Foutts is also required to forfeit his active membership in the master barbers association of which he has been a member for many years. He may continue to be a nonactive member of that association only for the purpose of retaining his benefit rights. He can have no voice in its management or activities. Such is the construction of the union's constitution as stated in the general president's report to the 1948 convention as it appears at page 21 of the printed record of the proceedings of that convention.
Foutts is unwilling to become a nonactive member in the master barber association and is unwilling to become a sterile and nonparticipating "proprietor member" of the defendant union in which he would be required to pay regular dues and be subject to assessments. It is because of such unwillingness on the part of Foutts that the union now says that it will enforce other provisions of its constitution and brand Foutts as a nonunion shop operator. If he will not accede to the demands of the union and pay money into its treasury in exchange for a sterile membership, the shop card will be removed. Such removal brings into operation the provisions of Section 3, Article VII of the union constitution, which reads in part: "When the union shop card is removed from any shop for violation of the laws, rules, regulations and agreements, all members employed therein shall immediately leave the employment of said shop."
Although the union indicates reluctance to picket his shop, the right to picket is asserted, in the event he refuses to yield to the union's demand, and such assertion is in fact a threat to do so. The situation here involved is not as though a piece of furniture belonging to the union had been loaned or rented to the proprietor of the barbershop and the owner of the article was proposing to remove it from the premises. The issue is whether Foutts can be branded as nonunion and be put out of business solely because of his unwillingness to pay tribute to the union which will not admit him as an active and bona fide member. Removal of the shop card is a mere symbol of what is actually taking place.
This issue is not merely local. The provisions of the revised constitution of the union apply nationwide. Similar cases have already arisen in several states. This is a test case in Ohio. Will a court of equity, in Ohio, place its stamp of approval upon this threat to destroy a man's business by refusing to enjoin the steps being taken to accomplish that result?
In the case of Wisconsin Employment Relations Board v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local 379B, 256 *789 Wis. 77, 39 N.W.2d 725, decided November 15, 1949, the Supreme Court of Wisconsin had before it the identical provision of the union constitution, i. e., the requirement that employers must become nonactive members of the local and international union of barbers or beauticians. The penalty for not becoming such member was withdrawal of the union shop card. In that case the withdrawal of the shop card was immediately followed by picketing. The banners carried by the pickets bore the ironical legend "The Vern Gantzer Beauty Salon does not display the union shop card of Local 379B." The board found this to be an unfair labor practice and issued a cease and desist order. On appeal the Supreme Court found that the effect of the provision of the union constitution was to force the employer to contribute financial support to the union by way of dues. Under a Wisconsin statute, contribution to any labor organization of financial support by an employer was declared to be an unfair labor practice. The board's order was affirmed.
Although in the above case a Wisconsin statute was enforced, the court first found the important fact of forced financial contribution through the operation of the union constitution. A court of equity should reach this same result without the aid of statutes.
The identical provisions of the union constitution were considered by the District Court of Appeals of California in the Riviello case, cited in the majority opinion, 88 Cal.App.2d 499, 199 P.2d 400. It was an action to restrain the same union from withdrawing the union shop card from plaintiffs' barber shop, from withdrawing the union member employees and from picketing plaintiffs' shop, as threatened, unless plaintiffs signed an agreement compelling them to become nonactive members of the union. The plaintiffs were proprietors who also worked with the tools of the trade.
The court pointed out that this was not an attempt to compel an employer who worked at the trade to join the labor organization with which he was competing. There the effort was to compel plaintiffs to become sterile members of the union with no right of seat or voice in local meetings, no right to hold office and no right to act as union delegates to conventions. "Apparently, the only `right' they would possess would be the `right' to pay dues." The court then made the following significant statement:
"According to the uncontradicted evidence, these plaintiffs cannot remain in business unless they have a union card. The defendants are threatening to remove that card and to picket unless plaintiffs become nonactive members of the union. In other words, plaintiffs cannot earn a living at their trade unless they join the union, and, if they join, they become sterile members. That cannot and should not be held to be a proper and lawful labor objective.

"* * * * * *
"Thus, it must be held that the objective sought by defendants is unlawful, and that the threat to picket to obtain such objective, is unlawful."
The only decision cited which supports the defendants in this case is Rainwater v. Trimble, 207 Ga. 306, 61 S.E.2d 420, decided September 11, 1950. There the plaintiffs were proprietors of a barbershop, who worked with the tools of the trade. The same union constitution was before the court. The proprietor barbers were informed that they must "join" the union and pay dues although Section 3, Article XVII of the revised constitution, would prohibit them from voting "on matters pertaining to wages, hours of labor, etc." and declared them "ineligible to any office in the local or international union or to act as delegate or alternate to conventions."
The plaintiffs sought an injunction to prevent the threatened removal of the "union shop" card.
In a brief opinion, which completely ignored the true significance of removal of the union shop card, the court held that agreement permitted its removal, that the agreement was binding unless in contravention of some rule of law and that there was no such rule of law in the Georgia Code. With all due deference to the Supreme Court of Georgia this decision falls far short of being an impressive precedent.
*790 The instant case is a proceeding in equity an appeal to the conscience of the court. The removal of the union shop card is not an innocent isolated act authorized by agreement. On the contrary it sets in motion a chain of eventswithdrawing all union employees, branding the plaintiff's shop as nonunion and destroying his business and picketingif the union elects to exercise its asserted right to do so. The excuse given for such course of action is not infraction of any union rules or laws at any time during a long period of years or refusal now to operate a strictly union shop, but only the unwillingness of Foutts to pay tribute by way of dues to an organization in which he is denied anything but nominal or sterile membership. Authorities need not be cited that extortion is illegal. That a court of equity should intervene to prevent such course of action is manifest.
The trial court and the Court of Appeals were fully justified in issuing the injunction prayed for and the judgment should be affirmed.