WISCONSIN EMPLOYMENT RELATIONS BOARD, RESPONDENT, vs. JOURNEYMEN BARBERS, HAIRDRESSERS & COSMETOLOGISTS INTERNATIONAL UNION OF AMERICA, LOCAL 379B, and others, Appellants.

*October 14—November 15, 1949.*

For the appellants there were briefs by *Padway, Goldberg & Previant* of Milwaukee, and oral argument by *David Previant*.

For the respondent there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert*.

For the complainants Vern Gantzer and Kenosha Beauty Shop Owners Association there was a brief by *Gerling, Hartley & Joanis* of Kenosha, and oral argument by *Fred D. Hartley* and *Kenneth A. Joanis*.

BROADFOOT, J. The material facts are to be found in the findings of fact by the board, which were as follows:

"1. That the complainant, Vern J. Gantzer, is a resident of the city and county of Kenosha, state of Wisconsin, and the owner and operator of a beauty shop known as the Vern Gantzer Beauty Salon, located at 520 Fifty-Eighth street, in the city of Kenosha, state of Wisconsin. That at said beauty salon the complainant Gantzer had, all of the times hereinafter mentioned, employed more than one employee.

"2. That the respondent Journeymen Barbers, Hairdressers & Cosmetologists International Union of America, Local 379B, is composed of employees of various beauty shops in the city of Kenosha in the state of Wisconsin, and is a voluntary unincorporated labor organization organized for the purpose of representing such employees in collective bargaining with employers in that community. That the respondent Bernice M. Johnson is the president of such local union and resides at 4803 Eighteenth avenue in said city, county, and state. That the respondent Josephine Rozinski is the treasurer of such union and resides at 1932 Fifty-Sixth street in said city, county, and state. That the respondents Burt Deutsch and Clarence O. Huff are representatives of the international union with which the local union is affiliated, and as such representatives have been assisting the local union in carrying on collective bargaining with the various employers in and about the city of Kenosha.

"3. That on the 7th day of May, 1947, the complainant Vern Gantzer entered into a collective-bargaining agreement with the respondent union in writing. Among others, this agreement contained the following provisions:

" 'It is further understood and agreed that the proprietor shall employ none other than members in good standing in the Beauticians Union Local 379B, and that every operator must present a working card to the proprietor, issued by the union, before he or she is engaged to work, except the pro-

prietor shall have the right to hire nonunion operators if Local 379B is not able to supply union help when called upon, provided however, that any nonunion operator employed shall immediately make application for membership and be issued a working permit by the secretary of the local union pending final approval.

" 'It is further understood that this agreement shall be and remain in force for a period of one year from the date hereof, and thereafter for a like period successively, unless terminated by either party upon written notice at least thirty days prior to the expiration of any year.'

"4. That no referendum has ever been conducted by the Wisconsin Employment Relations Board among the employees of Vern Gantzer pursuant to the provisions of section 111.06 (1) (c) of the Wisconsin statutes, and that such employees have never approved the inclusion of an all-union-shop provision in any collective-bargaining agreement between the complainant and the respondent union.

"5. That by a notice dated April 5, 1948, all of the beauty-shop owners in Kenosha were advised in writing by representatives of the union that the union desired to reopen the collective-bargaining agreement existing between the parties for certain amendments, and that the complainant Vern Gantzer was one of the employers so notified.

"6. That on the second day of June, 1948, the respondent union and the individual respondents acting on behalf of such union submitted to the complainant and to other employers in and around Kenosha a proposed collective-bargaining agreement to be executed by such complainant. That among others, such proposed agreement contained the following provision:

" 'That all those working at the trade and those eligible to membership according to constitution of the international union shall be members in good standing in the Journeymen Barbers, Hairdressers & Cosmetologists International Union, and that every beautician employee must present a working card to the proprietor, issued by the union, before he or she

is engaged to work, except the proprietor shall have the right to hire nonunion help if Union 379B is not able to supply union help when called upon, provided, however, that any nonunion help employed shall immediately make application for membership and be issued a working permit by the secretary of the union pending final approval, and . . .

"7. That article 8, section 3, of the constitution of the respondent international union contains the following provision:

" 'An employer shall be construed to be any person or persons who either owns or operates a barber or beauty shop and employs steadily one or more full-time barbers or beauty operators, provided, however, employers must become nonactive members of the local and international union of barbers or beauticians.'

"8. That on April 11, 1946, the complainant signed an agreement with the respondent union by the terms of which he agreed that in consideration of being allowed to display a union beauty-shop card issued by the respondent union that he would comply with all of the conditions imposed in the rules governing shop cards, which are printed on the back of said union-shop cards, and any subsequent rules.

"9. Among others, the following rule appeared on the back of the union beauty-shop cards:

" 'To abide by the laws of the Department of Hairdressers & Cosmetologists, J. B. I. U. of A., governing union beauty-shop cards and such laws as may be made in the future for the proper government of the same.'

"10. That the complainant Gantzer and a majority of the beauty-shop operators in Kenosha county organized a Kenosha beauty-shop owners' association for the purpose of attempting to negotiate a contract with the respondent union. That the complainant Gantzer, for himself and as a member of the executive committee of such association, discussed with representatives of the union a proposed contract, and

was informed that said shop owners would have to join the respondent union and that unless they did, their union-shop cards would be withdrawn and pickets placed in front of their respective places of business.

"11. That on or about the 22d day of July, 1948, at the request of the respondents Huff and Deutsch, the complainant Gantzer voluntarily surrendered to them his union-shop card. That thereafter, and on or about the 27th day of July, 1948, a picket was placed in front of the building in which said complainant Gantzer operates his place of business. That said picket was placed there by the respondent union and the individual respondents and carries a sign which states:

" 'The Vern Gantzer Beauty Salon does not display the union-shop card of Local 379B.'

"That the respondents have maintained a picket in front of said place of business during business hours of said beauty shop ever since such date.

"12. That no vote has been taken among the employees of Vern Gantzer authorizing such employees to co-operate in engaging in, promoting, or inducing picketing, boycotting, or any other overt concomitant of a strike.

"13. That such picketing is carried on by the respondent union and individual respondents for the purpose of inducing the complainant to enter into a collective-bargaining agreement containing an all-union-shop provision and for the further purpose of inducing the complainant to interfere with his employees in the enjoyment of their legal rights, particularly, their right to refrain from organization activities as set forth in section 111.04 of the Wisconsin statutes; and for the further purpose of inducing the complainant to become a member of and to contribute financial support to the respondent union."

By the order of the board, the appellants were directed to cease and desist from,—

"(a) Engaging in, promoting, or inducing picketing at or near the premises occupied by the complainant Vern Gantzer, as the beauty shop in the city of Kenosha, Wisconsin.

"(b) Attempting to compel or induce by picketing, or in any other manner, the complainant Vern Gantzer to enter into a collective-bargaining agreement containing an all-union-shop provision.

"(c) Interfering with the rights of employees to refrain from joining or assisting any labor organizations, or to compel or induce the complainant to become a member of and to contribute financial support to the respondent union."

In effect the board held that the appellants were committing unfair labor practices (1) in inducing the complainant to enter into a collective-bargaining agreement containing an all-union-shop provision; (2) in inducing the complainant to interfere with his employees in the enjoyment of their legal rights, particularly their right to refrain from organization activities; and (3) in inducing the complainant to become a member of and to contribute financial support to the union.

The appeal was taken from the whole of the judgment, but in their brief and in their argument before this court the appellants tacitly admit the legality of the order so far as it is based on the first two of the unfair labor practices, and attack only the third. The judgment would therefore have to be affirmed even though the finding and order of the board on the third point were found to be improper.

The one question submitted here for our consideration involves the construction of sec. 111.06, Stats., the material part of which is as follows:

"*What are unfair labor practices.* (1) It shall be an unfair labor practice for an employer individually or in concert with others: . . .

"(b)  To initiate, create, dominate or interfere with the formation or administration of any labor organization or contribute financial support to it, provided that an employer shall not be prohibited from reimbursing employees at their prevailing wage rate for time spent conferring with him, nor from co-operating with representatives of at least a majority of his employees in a collective-bargaining unit, at their request, by permitting employee organizational activities on company premises or the use of company facilities where such activities or use create no additional expense to the company."

The appellants contend that peaceful picketing is proper and legal as an exercise of the right of free speech; that the board acted entirely beyond its jurisdiction because where used in sec. 111.06 (1) (b), Stats., the term "financial support" was never intended to include the payment of initiation fees and dues by an employer as an inactive member of a union; that the "financial support" by an employer included in said section means such support as would dominate or interfere with the activities of an organization of his employees; and finally that there is nothing in this record which would indicate that the total of initiation fees and dues to be paid by the employer amounts to any substantial amount by comparison with that paid by employees, and therefore there is applicable the doctrine of *de minimus non curat lex*.

As to the last contention, it is true that there is nothing in the record to indicate the amount of the initiation fee or the dues or assessments, either past or prospective. However, several members of the Kenosha Beauty Shop Owners Association, all employers, were called and testified. In response to questions several of them stated the number of employees he or she employed at the time of the hearing. This number varied from one to seven. The average number of employees of those testifying was less than four. The highest number was seven and the lowest number was one.

Vern J. Gantzer, one of the complainants, had four employees. The financial support by the employer of one employee would therefore amount to fifty per cent of the union funds originating within that particular establishment. In the case of the complainant Gantzer his contribution would be twenty per cent of the amount originating within his place of business. The average, so far as the record discloses, would be somewhat in excess of twenty per cent. We hold this to be substantial in amount.

The following is a quotation from the appellants' brief:

"Additionally, the working employer enjoys many benefits as a journeyman which were obtained only by unceasing and costly struggles of the barbers' union and its members. The prices he can get for his service, the regulated training under apprenticeship laws, the beneficent legislation regulating the trade and entrance to the trade, all were obtained and are being maintained through the efforts of the Journeymen Barbers, Hairdressers & Cosmetologists International Union of America, A. F. of L., one of the oldest trade unions in the country. To require the working employer to share the expense of this beneficent work, of which he gets full advantage, is not only pre-eminently fair, but also consistent with basic American principles of distributing the costs among those who benefit by the expenditure."

The above argument is an admission by the appellants that the financial support of the employers in this case would be sufficient to aid in the expense of establishing and maintaining standards that are favorable to the union and its members.

In construing the statute in question, the trial court in its opinion held as follows:

"The term 'financial support' as used in the statute is not limited in any way,—it is used in its broadest sense. The financial support of unions consists chiefly if not wholly of the dues paid by its members. If dues paid by members would constitute financial support for a union the court fails to see why dues paid by employers would not also constitute financial support of the union. It is true that the term

'financial support' is much broader than the mere payment of dues and covers and includes financial support of any kind, character, or description, whether large or small in amount."

We adopt this construction. Many cases from other jurisdictions have been cited both by the appellants and the respondents to support their respective views as to the construction to be adopted. However, the determination here must be based solely upon the language of our particular statute.

*By the Court.*—Judgment affirmed.