Middleton, J.,
dissenting. The real issue in this case does not involve the mere right to remove a so-called shop card which is the physical propeity of the defendant union. The real issue involves that which is symbolized by the removal of the shop card.
The plaintiff, Foutts, has operated a union barbershop since November 19, 1936. On that date he received the union shop card in question which symbolized his agreement with the union, a portion of which agreement required him:
“(a) To abide by the laws of the J. B. I. U. of A. governing shop cards and such laws as may be made in the future for the proper government of the same.
“(b) To abide by the laws of the local union, now and in the future, with reference to prices, hours, wages, etc., etc.
“(c) To peaceably give up said shop card on demand of the local union or local executive board, through its duly appointed representative, for the violation of any local or international laws.
*583 “(d) To peaceably give up said shop card to the general secretary-treasurer, or duly appointed representative, in case of the suspension or disbandment of the local union which issues it, or for any other cause when called upon to do so.
It may well be urged that under this agreement Foutts was required to conform to all reasonable and legal “laws” adopted by the union but the agreement would not bind Foutts, for all time in the future, to abide by illegal enactments of the union or “laws” so unreasonable as not to have been within the contemplation of himself and the union at the time the agreement was made.
It is conceded that at all times since November 19, 1936, Foutts has conducted a union shop and has conscientiously observed all the rules, regulations and “laws” of the union with respect to employment, hours of labor, prices, rates of pay and all other features incident to the operation of a barbershop. Up to the time of the amendment of the constitution of the union by the union’s national convention in September 1948, the union took no exceptions whatever to the conduct of Foutts or his right to be considered as a union shop operator.
Throughout the period from November 19, 1936, to September 1948, the constitution of the union denied Foutts the right of membership therein because he was a proprietor, as well as a barber, who worked with the tools of the trade. In September 1948, the union in national convention adopted comprehensive amendments to its constitution. By these amendments the union required Foutts, and all others similarly situated, to “join” the union and to hold a special type of membership described as “proprietor members.” Such proprietor member is required by the amendments to pay regular monthly dues to the union but is declared “ineligible to vote on matters pertaining *584 to wages, hours of labor, etc.” It is further provided that he “shall also be ineligible to any office in the local or international union or to act as delegate or alternate to conventions.” (Section 3, Article XVII.)
As a proprietor member of the union, Foutts is also required to forfeit his active membership in the master barbers association of which he has been a member for many years. He may continue to be a nonactive member of that association only for the purpose of retaining his benefit rights. He can have no voice in its management or activities. Such is the construction of the union’s constitution as stated in the general president’s report to the 1948 convention as it appears at page 21 of the printed record of the proceedings of that convention.
Foutts is unwilling to become a nonactive member in the master barber association and is unwilling to become a sterile and nonparticipating “proprietor member” of the defendant union in which he would be required to pay regular dues and be subject to assessments. It is because of such unwillingness on the part of Foutts that the union now says that it will enforce other provisions of its constitution and brand Foutts as a nonunion shop operator. If he will not accede to the demands of the union and pay money into its treasury in exchange for a sterile membership, the shop card will be removed. Such removal brings into operation the provisions of Section 3, Article VII of the union constitution, which reads in part:
“When the union shop card is removed from any shop for violation of the laws, rules, regulations and agreements, all members employed therein shall immediately leave the employment of said shop. ’ ’
Although the union indicates reluctance to picket his shop, the right to picket is asserted, in the event he refuses to yield to the union’s demand, and such assertion is in fact a threat to do so. The situation here *585 involved is not as though a piece of furniture belonging to the union had been loaned or rented to the proprietor of the barbershop and the owner of the article was proposing to remove it from the premises. The issue is whether Foutts can be branded as nonunion and be put out of business solely because of his unwillingness to pay tribute to the union which will not admit him as an active and bona fide member. Removal of the shop card is a mere symbol of what is actually taking place.
This issue is not merely local. The provisions of the revised constitution of the union apply nationwide. Similar cases have already arisen in several states. This is a test case in Ohio. Will a court of equity, in Ohio, place its stamp of approval upon this threat to destroy a man’s business by refusing to enjoin the steps being taken to accomplish that result?
In the case of Wisconsin Employment Relations Board v. Journeymen Barbers, Hairdressers & Cosmetologists’ International Union of America, Local 379 B, 256 Wis., 77, 89 N. W. (2d), 725, decided November 15, 1949, the Supreme Court of Wisconsin had before it the identical provision of the union constitution, i. e., the requirement that employers must become nonactive members of the local and international union of barbers or beauticians. The penalty for not becoming such member was withdrawal of the union shop card. In that case the withdrawal of the shop card was immediately followed by picketing. The banners carried by the pickets bore the ironical legend “The Vern Gantzer Beauty Salon does not display the union shop card of Local 379 B.” The board found this to be an unfair labor practice and issued a cease and desist order. On appeal the Supreme Court found that the effect of the provision of the union constitution was to force the employer to contribute financial support to the union by way of dues. Under a Wisconsin *586 statute, contribution to any labor organization of financial support by an employer was declared to be an unfair labor practice. The board’s order was affirmed.
Although in the above case a Wisconsin statute was enforced, the court first found the important fact of forced financial contribution through the operation of the union constitution. A court of equity should reach this same result without the aid of statutes.
The identical provisions of the union constitution were considered by the District Court of Appeals of California in the Riviello case, cited in the majority opinion (88 Cal. App. [2d], 499, 199 P. [2d], 400). It was an action to restrain the same union from withdrawing the union shop card from plaintiffs’ barber shop, from withdrawing the union member employees and from picketing plaintiffs’ shop, as threatened, unless plaintiffs signed an agreement compelling them to become nonactive members of the union. The plaintiffs were proprietors who also worked with the tools of the trade.
The court pointed out that this was not an attempt to compel an employer who worked at the trade to join the labor organization with which he was competing. There the effort was to compel plaintiffs to become sterile members of the union with no right of seat or voice in local meetings, no right to hold office and no right to act as union delegates to conventions. “Apparently, the only ‘right’ they would possess would be the ‘right’ to pay dues.” The court then made the following significant statement:
“According to the uncontradicted evidence, these plaintiffs cannot remain in business unless they have a union card. The defendants are threatening to remove that card and to picket unless plaintiffs become nonactive members of the union. In other words, plaintiffs cannot earn a living at their trade unless they join the union, and, if they join, they become *587 sterile members. That cannot and should not be held to be a proper and lawful labor objective.
****
“Thus, it must be held that the objective sought by defendants is unlawful, and that the threat to picket to obtain such objective, is unlawful.”
The only decision cited which supports the defendants in this case is Rainwater v. Trimble, 207 Ga., 306, 61 S. E. (2d), 420, decided September 11, 1950. There the plaintiffs were proprietors of a barbershop, who worked with the tools of the trade. The same union constitution was before the court. The proprietor barbers were informed that they must “join” the union and pay dues although Section 3, Article XVII of the revised constitution, would prohibit them from voting “on matters pertaining to wages, hours of labor, etc.” and declared them “ineligible to any office in the local or international union or to act as delegate or alternate to conventions.”
The plaintiffs sought an injunction to prevent the threatened removal of the “union shop” card.
In a brief opinion, which completely ignored the true significance of removal of the union shop card, the court held that agreement permitted its removal, that the agreement was binding unless in contravention of some rule of law and that there was no such rule of law in the Georgia Code. With all due deference to the Supreme Court of Georgia this decision falls far short of being an impressive precedent.
The instant case is a proceeding in equity — -an appeal to the conscience of the court. The removal of the union shop card is not an innocent isolated act authorized by agreement. On the contrary it sets in motion a chain of events— withdrawing all union employees, branding the plaintiff’s shop as nonunion and destroying his business and picketing — if the union elects to exercise its asserted right to do so. The *588 excuse given for such course of action is not infraction of any union rules or laws at any time during a long period of years or refusal now to operate a strictly union shop, but only the unwillingness of Foutts to pay tribute by way of dues to an organization in which he is denied anything but nominal or sterile membership. Authorities need not be cited that extortion is illegal. That a court of equity should intervene to prevent such course of action is manifest.
The trial court and the Court of Appeals were fully justified in issuing the injunction prayed for and the judgment should be affirmed.