FRANK SIMON AND ASSOCIATED MASTER BARBERS OF NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. JOURNEYMEN BARBERS, HAIRDRESSERS, COSMETOLOGISTS AND PROPRIETORS INTERNATIONAL UNION OF AMERICA, LOCAL NO. 315, AND BRUNO J. SORIANO AND LOUIS D'AGOSTINO, DEFENDANTS-APPELLANTS.

Argued January 19, 1953—Decided February 16, 1953.

450

[redacted]

*Mr. Samuel L. Rothbard* argued the cause for appellants (*Messrs. Rothbard, Harris & Oxfeld,* attorneys).

*Mr. John J. Clancy* argued the cause for respondents.

The opinion of the court was delivered by

WACHENFELD, J.   Seeking injunctive relief restraining the defendants from, amongst other things, picketing the barber shop of the plaintiff and the shops of other members of the Associated Master Barbers of New Jersey, the plaintiffs filed their complaint.

Frank Simon for the past ten years has owned and operated a barber shop in the City of Plainfield.   He is a member of the Associated Master Barbers of New Jersey, an association of employer or proprietor barbers who own or operate their own barber shops.   It is affiliated with and part of the Associated Master Barbers and Beauticians of America, a national organization.   The chapter of which he is a member is known as Plainfield Chapter No. 945 and is composed of Simon and seven other proprietor barbers.

The complaint alleges Simon works in his shop with the tools of his trade and employs an associate barber who was a member of the defendant union; that by reason of his

employment of union help, plaintiff Simon was given a union shop card by the defendant union to display in his shop; that the defendants Bruno J. Soriano and Louis D'Agostino, respectively president and secretary-treasurer of the defendant union, demanded that Simon and other members of the corporate plaintiff sign written application for membership in the Employers Guild, which is an affiliate of the defendant union and governed by the same constitution and by-laws; that unless they signed an application and became members of the guild, the union shop card would be removed, their shops would be picketed, the journeymen barbers employed in their shops would not be permitted to remain; and it further asserted Simon's shop had been picketed by members of the defendant union, and the shops of other members of the corporate plaintiff had been intermittently picketed, with the threat to put Simon and the others out of business.

An order was issued requiring the defendants to show cause why the prayers and the relief sought in the complaint should not be granted and why an interlocutory injunction should not issue preventing and restraining the defendants from picketing the barber shops of the plaintiffs and from interfering with and depriving the plaintiffs of their rights and property as described in the complaint. No preliminary or interlocutory injunction was granted.

The defendants gave notice of a motion for an order vacating and dismissing the order to show cause upon the ground it was improvidently and improperly entered and dismissing the complaint because it did not disclose a cause of action, was sham and frivolous, and because no summons had issued within the time limit permitted by the rule applicable to such cases.

The motion, after argument, was denied, whereupon the defendants filed an answer denying they had demanded but admitting they had requested that the plaintiff Simon and the other members of the corporate plaintiff join the guild. The defendants further asserted that the employee of Simon, one John Puglisi, was suspended from membership in the

union in February 1952 and thereafter they requested Simon to surrender the union shop card and upon his refusal D'Agostino, one of the defendants, together with other persons, did in March enter the shop and remove the union shop card. They admitted picketing the shops of the plaintiffs but justified their action on the ground that a labor dispute existed within the meaning of *R. S.* 2:29–77.1 *et seq.*, presently *N. J. S.* 2A:15–51 *et seq.*

When the defendants' answer had been filed, counsel representing them suggested oral testimony be waived and the case be submitted on complaint and answer. He was reluctant, however, to have final judgment rendered thereon but was willing to proceed "for interlocutory purposes."

It was then stipulated the parties proceed "as if testimony were taken; that no technical objections will be made by reason of the fact that your Honor did not take testimony; in other words, submission on the pleadings and exhibits. We are willing to submit the matter."

Defendants' counsel then reversed his stand and suggested final judgment be determined on the same stipulation and that the court should dispose of the matter on the pleadings and enter such final judgment, the plaintiffs having agreed to waive their claim for money damages.

The court below found as a fact from the record, amongst other things, that the union shop card was the property of the defendant union. It came into possession of the plaintiff Simon because he employed union help. One of the rules governing union shop cards, printed on the reverse side specifies such card may not be displayed in a shop where non-unionists are employed, and any person eligible to membership in the union who is not in good standing should be considered a non-unionist. When Simon received his card, his employee was a member of the union in good standing, but on February 29, 1952 the employee was suspended from membership. He was notified of such suspension March 3, 1952 in a letter signed by the defendant D'Agostino. No reason was offered or shown for the suspension and the court

concluded it was arbitrary and done for the purpose of lending color to the creation of a labor dispute and as part of a scheme in furtherance of the defendants' unlawful object.

The court also found that the defendant neither gave Simon the opportunity of employing a member of the union in good standing nor offered to replace the suspended member.

Final judgment was entered enjoining, preventing and restraining the defendants from:

(1) Withdrawing, removing or threatening to remove the union shop card of defendant, Local 315, from plaintiffs' places of business;

(2) Requiring, compelling or demanding by threat of force or violence or other intimidatory tactics that the plaintiffs or any of them affiliate with or become members of Local 315 of the J. B. H. C. and P. I. U. of A. as inactive, non-active, sterile or non-voting members or with the full privilege of members; and

(3) Picketing or threatening to picket or otherwise interfering with the conduct of the plaintiffs' business to enforce said demands or any of them.

The defendants assert the trial court erred in denying their motion to dismiss the complaint and the order to show cause, principally upon the ground that no summons was issued.

*Rule* 3:79-2 provides for the issuance of complaint and order to show cause which "shall order the defendant to show cause why final judgment should not be rendered for the relief sought," and it may embody appropriate intermediate relief. *Rule* 3:79-3 provides no summons shall issue, while *Rule* 3:79-4 states that the court may "order the action to proceed as in a plenary action wherein a summons has issued," and *Rule* 3:79-5 directs:

"The court shall try the action on the return day, or on such short day as it may fix. If no objection is made by any party * * * the court may try the action on the pleadings and affidavits, and render final judgment thereon."

The procedure, we think, complies with our rule, but, additionally, we see no error as the plaintiffs did not seek a final determination on the return day.

The order to show cause incorporated a number of alternative procedures but it specifically ordered the defendant to show cause why an interlocutory injunction should not issue. The proceedings anticipated being summary in nature and the relief sought not being final, it follows it was not necessary for a summons to have issued.

The record indicates the court intended to decide only the application for an interlocutory injunction on the return day. It was at the behest of defendants' counsel that the matter went to final determination. The defendant cannot now be heard to complain of the finality of the proceedings, which he suggested.

The appellants insist the issues involved constitute a labor dispute within the purview of *N. J. S.* 2A:15–51 *et seq.*, and the complaint should therefore have been dismissed and no injunction issued. The court below, relying on the recent decision of *Outdoor Sports Corp. v. A. F. of L., Local* 23132, 6 *N. J.* 217 (1951), found otherwise and held no labor dispute existed. We are not, however, required to pass upon that question because of the disposition above made.

But the appellants assert irrespective of whether or not the situation falls within the classification of labor dispute as defined by the statute, *N. J. S.* 2A:15–51 *et seq.*, the objectives sought were lawful and therefore cannot be enjoined.

The court below found to the contrary and decided the objective sought was to force the plaintiff to join the guild, which was the primary purpose of the picketing. It also determined if the plaintiffs should become members, they would be required to resign from the Associated Master Barbers of New Jersey and be deprived of the benefits thereunder they would otherwise have and would then be ineligible in the guild to vote on matters pertaining to wages and hours of employment and ineligible to hold office in the local or

international union. It determined the object sought to be unlawful.

In *Riviello v. Journeymen Barbers, etc.,* 88 *Cal. App. 2d* 499, 199 *P. 2d* 400, 405 (*D. Ct. App.* 1948), the situation was closely akin to the one presently involved. The union constitution contained a similarly restrictive clause and the court, in referring to it, said:

> "A clearer case of attempting to create a discriminated against class of members cannot be imagined. * * * In other words, plaintiffs cannot earn a living at their trade unless they join the union, and, if they join, they become sterile members. That cannot and should not be held to be a proper and lawful labor objective."

There is no necessity for marshalling the history of the many decisions on picketing in this state. The parties agree that peaceful picketing, when it is for lawful purposes, regardless of whether or not a labor dispute exists, should not be enjoined. See *Thornhill v. Alabama,* 310 *U. S.* 88, 60 *S. Ct.* 736, 84 *L. Ed.* 1093 (1939); *Cafeteria Employees Union v. Angelos,* 320 *U. S.* 293, 88 *L. Ed.* 58, 64 *S. Ct.* 126 (1943); *Coons v. Journeymen Barbers HCIU,* 222 *Minn.* 100, 23 *N. W. 2d* 345 (*Sup. Ct.* 1946); *AFL v. Swing,* 312 *U. S.* 321, 85 *L. Ed.* 855, 61 *S. Ct.* 568 (1940); *LoBianco v. Holt,* 189 *Misc.* 113, 70 *N. Y. S. 2d* 33 (*Sup. Ct.* 1947); *Ex Parte Hunn,* 357 *Mo.* 256, 207 *S. W. 2d* 468 (*Sup. Ct. Mo.* 1948); *Kellar v. Sun,* 93 *N. Y. S. 2d* 165 (*Sup. Ct.* 1949); *Bakery & P. Drivers & Helpers IBT v. Wohl,* 315 *U. S.* 769, 86 *L. Ed.* 1178, 62 *S. Ct.* 816 (1941); *Bldg. Service Employees, etc., v. Gazzam,* 339 *U. S.* 532, 70 *S. Ct.* 784, 94 *L. Ed.* 1045 (1950).

Where the purpose is not lawful, however, the rule is otherwise:

> "Where the object of the picketing is unlawful, irrespective of its militant or intimidating character, such picketing may be restrained whether peaceable in fact or not, since peaceable acts, if unlawful and resulting in irreparable injury, may be enjoined." 218–220 *Market St. Corp. v. Delicatessen, etc., Local* 410, 118 *N. J. Eq.* 448 (*Ch.* 1935).

In *Bayonne Textile Corp. v. American Federation of Silk Workers*, 116 *N. J. Eq.* 146 (*E. & A.* 1934), the court said:

"The modern view is that picketing is not *per se* unlawful, and should not be enjoined, if peaceably carried on for a lawful purpose."

While in *Kingston Trap Rock Co. v. International, etc., Local 825*, 129 *N. J. Eq.* 570 (*E. & A.* 1940), it was said:

"It is not the size of the union that taints it with illegality; it is rather the unlawful means or methods employed, or the striving for an unlawful *object* * * *."

The appellant apparently admits this to be the rule, as it says in its brief: "However, injunctions have been issued and upheld against peaceful picketing when such activity is for an unlawful purpose."

In *Dorchy v. Kansas*, 272 *U. S.* 306, 47 *S. Ct.* 86, 87, 71 *L. Ed.* 248 (1926), Mr. Justice Brandeis said:

"The right to carry on business—be it called liberty or property—has value. To interfere with this right without just cause is unlawful. The fact that the injury was inflicted by a strike is sometimes a justification. But a strike may be illegal because of its purpose, however orderly the manner in which it is conducted. * * * Neither the common law, nor the Fourteenth Amendment, confers the absolute right to strike. * * *"

The principle thus enunciated was reiterated in slightly different language in *Building Service. Employees, etc., v. Gazzam, supra* [339 *U. S.* 532, 70 *S. Ct.* 787], where Mr. Justice Minton said:

"* * * This Court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution. * * * But since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action or non-action than the message the pickets convey, this Court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity."

■ Viewed in the light of the record and these authorities, the court below was justified both in law and in fact in granting the injunctive relief asked for against the picketing.

As to the union shop card, the appellant contends it was properly removed from the shop of the individual plaintiff inasmuch as Puglisi had been suspended from the defendant union and, under the conditions controlling the issuing of the card, and because of that fact, it was entitled to the return of the card. The appellants also suggest they were warranted in withdrawing the card because Simon had failed to abide by "the agreement covering display of the union barber shop cards."

■ The trial court found the employee had been unlawfully suspended without notice or hearing and the appellants seem not to object to the finding so made. Under these circumstances, the suggestion based upon the suspension has little merit, leaving for determination only the view advanced that under the terms of the contract made between the parties and the conditions printed on the card itself the appellants are entitled to possession of the shop card.

The plaintiffs in their reply allege that Simon never signed the contract and what appears to be his signature affixed thereto is a forgery. This factual issue was never decided below nor is there sufficient in the record to determine it here.

■ If it is a forgery, the appellants' contention falls by the wayside and the rights of the litigants must be determined without the contract, but the conditions stated on the card may still require consideration. If it is not a forgery, the contract as well as the terms of the card must be interpreted and the obligations and the rights of both parties decided. The law should not be adjudicated until after the facts have been determined. The legal issue is important and seems of novel impression in this jurisdiction while apparently in conflict elsewhere.

■ There is another reason for our conclusion as hereinafter directed. The complaint alleges the card in question

was removed before the filing of the complaint, and the defendants admit this fact. Indeed, its taking was the subject of a criminal complaint made by the plaintiff Simon which was subsequently dismissed.

The relief granted was enjoining "withdrawing, removing or threatening to remove the union shop card of the defendant, Local No. 315, from the plaintiffs' places of business." As concerns the plaintiff Simon, it was restrictive of an act already committed and under the circumstances meaningless. The form of the relief granted should be in accord with the problem presented.

As to the corporate plaintiffs, the pleadings and the record are silent as to whether or not they executed a contract comparable to the one supposedly signed by the individual plaintiff and as to how they obtained their shop cards, the only reference made thereto being by inference. These facts should also be ascertained and the applicable law construed.

The cause is remanded to be proceeded with consistent with this opinion and to determine the facts and the law and the relief, if any, decreed in this respect so it may properly be passed upon here if presented. The judgment in all other respects is affirmed.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.