25 N.J. Super. 514 (1953)
96 A.2d 696
CORDEY CHINA CO., A CORPORATION OF THE STATE OF NEW JERSEY. PLAINTIFF,
v.
UNITED MINE WORKERS OF AMERICA, DISTRICT 50, EDWARD J. HICKEY, OTTO HARTMAN, JOHN L. STRYCHARZ, HARRY EDWIN SERVIS, SHELDON JACK ON, HELEN MARGARET SEEFELT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 30, 1953.
*516 Messrs. Minton, Dinsmore & Lane (Mr. H. Collin Minton, Jr., appearing), attorneys for plaintiff.
Mr. John A. Waldron, attorney for defendants.
EWART, J.S.C.
This suit arises out of a labor dispute at the plant of the plaintiff Cordey China Co., a body corporate, situate in Hamilton Township, Mercer County. Plaintiff now is and has for some years been engaged in the business of manufacturing and selling novelty and art china and has a normal complement of about 85 employees. Its products move in the channels of interstate commerce.
On March 26, 1953 defendants called a strike at plaintiff's plant, have maintained a picket line in front of the plant since that date to the present time, and by reason thereof plaintiff has lost the services of all but 18 of its employees, deliveries of material to the plant have been in part halted by reason of the refusal of union truck drivers to cross the picket line, plaintiff's business has fallen off 75% or more compared with normal operations, many orders for the plaintiff's products have been cancelled by its customers by reason of the plaintiff's inability to manufacture and deliver, and *517 the plaintiff corporation is suffering substantial damage by reason of its inability to operate normally and to manufacture and produce the products upon which its continued operation and existence depend.
The picketing has been peaceful and has not been marked by any violence or threats of violence, so far as the proofs disclose, although the very existence of the picket line has had a certain coercive effect, both upon employees afraid to cross the picket line and upon union truck drivers who formerly delivered materials to the plaintiff's plant.
The pickets have carried placards reading: "Plant on strike for union recognition. District 50, UMWA."
So far as disclosed by the proofs, the employees of the plaintiff's plant were not organized nor were they represented by any union prior to the present controversy which began in February of this year. On February 4 and February 6, 1953, organizers of the defendant union appeared at the plant, interviewed and talked with employees as they left the plant, and met with management of the plant for the first time on or about February 6, 1953 at which time the representatives of the defendant union informed management that it had a substantial majority of the employees signed up, offered to produce the cards signed by the employees, and requested an election to select a bargaining representative for the employees to be held either under the State or Federal Mediation Service, or under the supervision of the Honest Ballot Association. The proofs are uncontradicted that at the first meeting early in February between representatives of the U.M.W. and of management, approximately 50 out of a total of 85 employees had signed cards indicating their desire that the defendant union be their bargaining representative.
A Mr. Cybis was president, of the plaintiff corporation, but was incapacitated by reason of illness to attend to the duties of his office or to be present at the plaintiff's plant during the most of the negotiations between the union representatives and management heretofore and hereinafter referred to. A Mr. Harry Greenberg had been brought in as comptroller *518 of the plaintiff's plant about the middle of December of 1952, had acted in that capacity and also in charge of personnel after January 1, 1953; and Greenberg carried on negotiations with representatives of the defendant union until President Cybis was able to return to the plaintiff's plant and take charge about April 1, 1953. However, Greenberg had been given full authority to carry on negotiations on or about February 16, 1953. Before that date he was compelled to consult with President Cybis at the latter's home and had no authority to arrive at any agreement with the defendant union. The proofs do not disclose any disagreement between plaintiff corporation and its employees concerning hours of employment, working conditions, rates of pay, or other specific matters. The defendant union demanded only that it be recognized as the bargaining representative of plaintiff's employees. And the strike called by the defendant union on March 26, 1953 and the picket line established on that date and maintained continuously since that date was for the sole purpose of compelling recognition by the plaintiff of the defendant union as the sole bargaining agent of the employees of the plaintiff corporation. And in that connection, the representatives of the union requested and offered to submit to an election to be held under the auspices of either the State Mediation Service, or the Federal Mediation Service, or the Honest Ballot Association.
President Cybis, speaking through his representative Mr. Greenberg, and on later occasions speaking for himself, offered to recognize as bargaining agent and deal with any union selected by the employees, providing the union had qualified under the provisions of the Labor Management Relations Act, 1947 (Taft-Hartley).
It was admitted that the defendant union has never qualified under the provisions of the act in question by filing copies of its constitution, financial statements, and non-Communist affidavits by its officers.
To complicate the situation in which the plaintiff found itself, the National Brotherhood of Operative Potters, an A.F.L. union, represented by a Mr. Solon and by Mr. *519 Wheatley, intervened as early as February 13, informed plaintiff corporation's representatives that it had a number of members among plaintiff's employees, offered to participate in an election under the auspices of the National Labor Relations Board for the purpose of selecting a bargaining representative, informed plaintiff's representatives that it would not consent to an election where the defendant union's name appeared upon the ballot for the reason that the defendant union had never qualified under the Taft-Hartley Act, and Mr. Wheatley of the Potters Union strongly stated his position and informed the plaintiff as early as February 19, 1953 that if the plaintiff accorded recognition to the defendant union as bargaining representative of its employees, then the Potters Union would throw pickets around the plaintiff's plant and do everything it could to block the plaintiff's operations and to block recognition of the defendant union. And Wheatley further informed plaintiff's representatives that it would not agree to a consent election with a ballot on which appeared the name of the defendant union, because of non-compliance by the defendant union with the requirements of the Taft-Hartley Act, but would only consent to an election under the auspices of the N.L.R.B.
Mr. Greenberg, representing the plaintiff corporation, was in constant and almost daily touch with representatives of the defendant union, as well as with Mr. Ballantine of the State Mediation Service and Mr. Walsh of the Federal Mediation Service. President Cybis also attended two or more meetings prior to his return to the plant on April 1. Plaintiff's representatives were informed by Mr. Walsh of the Federal Mediation Service that he could do nothing under the circumstances, and Mr. Ballantine of the State Mediation Service informed plaintiff's representatives that he could only conduct an election with the consent of all interested parties. And Mr. Greenberg, representing the plaintiff corporation, was likewise informed by Mr. George Abrams of the Honest Ballot Association that his association would only supervise an election with the consent of all interested parties.
*520 In this situation the strike was called by the defendant union on March 26 and picket line established on that date.
On or about April 15, 1953 the International Brotherhood of Operative Potters, A.F.L., filed with the National Labor Relations Board petition for certification of representatives pursuant to section 9 (c) of the National Labor Relations Act, claiming a question of representation existed among employees of the plaintiff's plant and requesting an election under the auspices of the N.L.R.B. (see Exhibit P-8).
I find the foregoing state of facts from testimony and proofs adduced before me at hearings on April 22 and April 23, 1953.
Plaintiff corporation filed its complaint on April 17, 1953, alleging the existence of a strike and picket line, that it was unable to carry on its normal business by reason of the existence of the strike and picket line, asserting it was suffering irreparable damage, and demanding an injunction prohibiting the defendants from continuing maintenance of the picket line and from interfering with delivery of materials to the plaintiff's plant and from interfering with those of plaintiff's employees who desire to return to work. Upon the filing of the complaint, an order was made April 17, 1953 (without temporary restraint) fixing April 22, 1953 as the date for hearing on plaintiff's application for interlocutory injunction. Copy of the complaint and order for hearing were duly served and hearings were held on the dates mentioned, at which time witnesses were produced by both sides and examined and cross-examined, exhibits offered in evidence, etc.
It has been established by the proofs that the sole purpose of the strike and of the picket line is to force the plaintiff to recognize the defendant union as the sole bargaining agent of the plaintiff's employees.
Plaintiff contends that even though the picketing be peaceful, nevertheless the defendant union, by maintenance of the picket line, is attempting to coerce the plaintiff to do an illegal act, viz., to grant recognition to the defendant union as the sole bargaining agent of plaintiff's employees even though the defendant union has not qualified under the provisions *521 of the Taft-Hartley Act and notwithstanding there is now pending before the National Labor Relations Board a representation proceeding initiated by the filing on or about April 15, 1953 of a petition by International Brotherhood of Operative Potters, A.F.L.
It is to be borne in mind that the defendant union has never qualified under the provisions of the Labor Management Relations Act, 1947 (Taft-Hartley) (29 U.S.C.A., sec. 159 (f), (g) and (h)) by the filing of non-Communist affidavits, etc.
While the defendant union claimed to represent a majority of plaintiff's employees, nevertheless a contest existed between the defendant union and the National Brotherhood of Operative Potters, A.F.L., as to which union should be designated as bargaining agent for the employees, and the latter union, on or about April 15, 1953, filed petition with the National Labor Relations Board as aforesaid.
In the first place, there is respectable authority for the statement that an employer is under no obligation to recognize or deal with a labor organization, even if in fact it represents a majority of the employees, which has not qualified under the Labor Management Relations Act, 1947, by filing non-Communist affidavits, etc.
In Fulford v. Smith Cabinet Mfg. Co., 118 Ind. App. 326, 77 N.E.2d 755, decided by the Appellate Court of Indiana, sitting in banc (1948), the court below had issued a temporary injunction against appellants, about 100 in number, all of whom were picketing the employer's plant and all but two of whom were former employees of the plaintiff company. The employer was engaged in the business of manufacturing and shipping radio cabinets from its plant in Salem, Indiana, and was engaged in interstate commerce. In August 1947 a consent election was held at which Local No. 309, C.I.O., United Furniture Workers of America, received a majority of the employees' votes, but thereafter the plaintiff company refused to recognize the union until it should have been qualified as representative of said employees by the National Labor Relations Board. The union refused to take the *522 necessary steps leading to certification, including filing of copy of its constitution, by-laws, financial statements, and non-Communist oaths of its officers as required by the provisions of the Taft-Hartley Act above cited, and the labor dispute followed involving a strike and picket line. The question was fairly presented as to whether the granting of the injunction was prohibited by a section of the Indiana statute which prohibited the granting of injunctions in labor dispute cases unless and until the employer had complied with the obligations imposed by the statute, to wit, recognition of the union as representative of the employees and the making of every reasonable effort to settle the dispute by negotiation, mediation or voluntary arbitration. The only dispute involved between the employer on the one part and the union and employees on the other was recognition of the union as bargaining agent of the employees. The court said:
"We think it is the plain intent of the Act that if a union is not eligible for certification it cannot compel recognition as the representative of the employees, and need not be recognized as such. Any other construction would leave the unit without effective representation and would be contrary to the spirit of the Act. The company's refusal to recognize the union was therefore not a failure to comply with an obligation imposed by law.
Since the union's sole demand was for recognition as the representative of the production workers, upon which it insisted, but which the appellee was lawfully entitled to refuse, and had finally refused, there was nothing to negotiate, mediate or arbitrate, for the law could not require the appellee, by the compulsory employment of those processes, and as the only possible result thereof satisfactory to the appellant, to forego a clear legal right."
The Appellate Court sustained the court below in granting the injunction against picketing.
In Stewart-Warner Corp. v. N.L.R.B., 194 F.2d 207 (C.C.A. 4, 1952), the court set aside an order of the National Labor Relations Board which directed the employer to cease and desist from recognizing an A.F.L. union, referred to as I.B.E.W., as bargaining agent of its employees. It appeared that an election had been held under the Board's supervision in July of 1949 and at the election *523 the A.F.L. union obtained a majority of the employees' votes. But certification by the Board of the A.F.L. union as bargaining representative was withheld because of some charge of unfair labor practices connected with the election filed immediately after the election by a member of another union, referred to in the opinion as the UE union. The latter union had not qualified under the provisions of the Taft-Hartley Act above cited by having its officers file the non-Communist affidavits required, etc.
In setting aside the Board's order, the court said in part:
"The company was under no obligation to recognize or deal with the UE even if it had obtained a majority * * *."
The court's decision was grounded on the proposition that the UE union had not qualified under the provisions of the Taft-Hartley Act.
In N.L.R.B. v. Tennessee Egg Co., 199 F.2d 95 (C.C.A. 6, 1952), the court held that the employer was under no obligation to bargain collectively with a labor union when at the time of the refusal to bargain the union officers had not qualified under the provisions of the Taft-Hartley Act by filing non-Communist affidavits, etc.
Secondly, it has been settled that during the pendency of a representation proceeding before the National Labor Relations Board to determine or select a bargaining agent to represent the employees, recognition by the employer of one of two or more contending unions would constitute illegal interference with the Board's election procedures as well as an unfair labor practice in violation of 29 U.S.C.A., sec. 158(a) (1) which guarantees to employees the right of self-organization and the right to bargain through a representative of their own choosing. An employer is bound to remain neutral and cannot recognize or bargain with one of two or more labor organizations competing for such recognition during the pendency of such representation proceedings before the National Labor Relations Board. Hoover Co. v. NLRB, 191 F.2d 380 (C.C.A. 6, 1951).
*524 To the same general effect, see also: Goodwin's Inc. v. Hagedorn, 303 N.Y. 300, 101 N.E.2d 697 (Ct. App. 1951); Mayer v. Doe, 121 N.Y.S.2d 649 (N.Y. Sup. Ct. 1952) (also reported C.C.H., Topical Law Reports, page 82,392, No. 67,196); Plastic Calendering Corp. v. Spilberg, 121 N.Y.S.2d 297 (N.Y. Sup. Ct. 1953) (also reported C.C.H., Topical Law Reports, page 83,240, case No. 67,464).
In the Goodwin case, supra, the court held that where an application is pending before the National Labor Relations Board for certification of a collective bargaining representative, picketing to compel union recognition will be enjoined upon the ground that no labor dispute exists.
In the Mayer case, supra, the court held that during the pendency of representation proceedings in which several unions made conflicting representative claims, it is unlawful for such unions to attempt to coerce the employer into signing a collective bargaining agreement before they are certified and that the employer is entitled to injunctive relief against strikes and picketing in which some of the unions engaged for such unlawful purposes and which have the effect of disrupting the operations of the employer's business.
In the Plastic Calendering Corp. case, supra, the court held that during the pendency of a representation proceeding before the N.L.R.B., it is unlawful for a union to picket the employer's place of business for the purpose of being recognized in advance of certification and that picketing conducted for such an unlawful objective does not involve a labor dispute within the meaning of the state's anti-injunction act and may be enjoined without compliance with the requirements of the state's statute.
Thirdly, it is settled law in this State that picketing is not beyond the control of the State if the manner in which the picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. The law does not authorize a State to prohibit peaceful picketing for a lawful purpose nor does it prevent the State from enjoining *525 coercive picketing in furtherance of an unlawful purpose or objective. Outdoor Sports Corp. v. Am. Fed. of Labor, 6 N.J. 217 (1951).
Fourthly, picketing carried on by a labor organization, even if peaceful, for the purpose and with the objective of coercing the employer into the doing of an unlawful act, may be enjoined notwithstanding the right of free speech guaranteed by the Fourteenth Amendment to the Federal Constitution. Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); International Brotherhood of Teamsters, etc. v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995 (1950); Building Service Employers International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045 (1950); Local Union No. 10, Journeymen Plumbers and Steamfitters, etc., AFL v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. ___ (1953); 218-220 Market Street Corp. v. Delicatessen, etc. No. 410, 118 N.J. Eq. 448 (Ch. 1935); Simon v. Journeymen Barbers, etc. Union, 11 N.J. 448 (1953).
In the Graham case, supra, decided by the United States Supreme Court March 16, 1953, the City of Richmond had entered into a contract with Graham for the construction of a public school. The union picketed the project because some of the subcontractors were employing non-union help. The picketing was peaceful and unmarked by violence. The State of Virginia had a so-called Right To Work Statute which declared in substance that the right of persons to work should not be denied or abridged on account of membership or nonmembership in any labor union and prohibited any agreement between any employer and a labor organization or union whereby persons not members of a union should be denied the right to work, etc.
The court found that the picketing was carried on for the purpose of compelling the contractors to get rid of non-union help employed on the project. The Virginia Court found that the picketing complained of was being carried on by the defendants to accomplish purposes and objectives in conflict with the provisions of the Right to Work Statute, was *526 therefore illegal, and granted an injunction against a continuation of the picketing. The United States Supreme Court sustained the injunction and held, inter alia, that the granting of an injunction in this particular case was not inconsistent with the right of free speech guaranteed by the Fourteenth Amendment to the Federal Constitution.
There can be no doubt under the proofs in this case that the plaintiff Cordey China Co. is suffering, by reason of the defendants' picketing and interference with normal operations at the plaintiff's plant, a very serious interruption of its business; that it has lost a large part of its business; and that if the defendants be permitted to continue their operations unrestrained, the plaintiff's business will be destroyed and the plaintiff will be put out of business. Such consequences constitute irreparable injury and authorize the issuance of a preliminary injunction. Outdoor Sports Corp. v. A.F.L., etc., 6 N.J. 217 (1951).
Accordingly, on the basis of the proofs in this case, I specifically find the following:
(1) That unlawful acts have been committed by the defendants against the plaintiff commencing March 26, 1953 and continuing up to this date, and are likely to be continued unless restrained, the unlawful acts consisting of the calling of a strike of plaintiff's employees, the institution on March 26, 1953 and maintenance since that date of a picketing line in the front of plaintiff's plant, the interference with employees of the plaintiff who desire to return to work and the interference with the delivery of materials to the plaintiff's plant, all for the purpose of forcing and coercing the plaintiff to recognize the defendant union as the sole bargaining representative of the plaintiff's employees while the defendant union has not qualified under the provisions of the Labor Management Relations Act, 1947, and during the pendency of a representation proceeding before the National Labor Relations Board.
(2) That substantial and irreparable injury and damage to the plaintiff's property and property rights will follow unless relief be granted.
*527 (3) That as to each item of relief granted greater injury will be inflicted upon the plaintiff by denial thereof than will be inflicted upon the defendants by the granting thereof.
(4) That plaintiff has no adequate remedy at law.
(5) That the plaintiff has not failed to comply with any obligation imposed by law and which is involved in the labor dispute in question, nor has the plaintiff failed to make every reasonable effort to settle such dispute either by negotiation, or with the aid of any available governmental machinery of mediation or voluntary arbitration.
A temporary or interlocutory injunction will be granted accordingly.