39 N.J. Super. 250 (1956)
120 A.2d 767
THE JOURNEYMEN BARBERS, HAIRDRESSERS AND COSMETOLOGISTS' INTERNATIONAL UNION OF AMERICA, LOCAL 687, NOW KNOWN AS JOURNEYMEN BARBERS, HAIRDRESSERS, COSMETOLOGISTS AND PROPRIETORS' INTERNATIONAL UNION OF AMERICA, LOCAL UNION 687, PLAINTIFF-APPELLANT,
v.
ROY POLLINO, VINCENT CANNAMELA, CHARLES GUARINO AND JOHN TOTH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1956.
Decided February 27, 1956.
*253 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Abraham L. Friedman argued the cause for plaintiff-appellant (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Samuel L. Rothbard, of counsel).
Mr. Samuel V. Convery argued the cause for defendants-respondents (Mr. I. Oscar Spevack, on the brief).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The plaintiff, a local union associated with the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' International Union of America (herein called the International), sued in a county district court to *254 replevy four union shop cards issued to the four defendants. The cards are designed for display in a barber shop as a symbol of union recognition; on the face of each card appear the words "Union Shop" in large letters. The four defendants are employer barbers, each working at the trade in his own shop in Perth Amboy, New Jersey, each of them employing one journeyman barber except that one of them employs three. The court gave judgment for defendants Plaintiff appeals.
Questions are raised as to whether the county district court has jurisdiction over the subject matter of the action. Under our present appellate practice, however, this is a matter of minor concern. If the cause is cognizable, not in that court, but in some other trial court in the State, we nevertheless should endeavor to resolve the substantial questions; however, we then, through our mandate, will direct judgment on our conclusions to be entered in a court which has jurisdiction of the subject matter. R.R. 1:27D(b).
Putting first things first, we turn to the troublesome substantial questions. Is the plaintiff entitled to the possession of the shop cards? Should the law refuse to aid the plaintiff because of plaintiff's alleged ulterior motives here?
The defendants do not inform us explicitly as to the injury they would suffer if the cards were taken from them. Neither a strike, boycott or picketing is suggested. But obviously the cards bring to defendants' shops a certain amount of patronage from union men and their sympathizers; and the replevin of the cards would impair defendants' livelihood to presumably a substantial extent. However, it does not appear that the return of the cards to the plaintiff would subject defendant to any other injury. We have not overlooked the following provision of the International's constitution (Art. VII, sec. 3):
"When the Union Shop Card is removed from any shop for violation of the laws, rules, regulations and agreements, all members employed therein shall immediately leave the employment of said shop. For failure to comply with the above the member or members will *255 be subject to suspension and to penalties as provided for in Article XIII of this Constitution."
The parties have not alluded to this provision in their arguments before us. However, there is some suggestion in the testimony that the union is not enforcing it at the present time, and we of course should not on our own initiative assume that the clause will affect the defendant.
We shall look first at the case as plaintiff argues it.
Under agreements, similar in form, heretofore signed by defendants (defendants in their brief admit that all four of them signed up), the defendants each agreed:
"* * * I will comply with all the conditions imposed in the `Rules Governing Shop Cards' which are printed on the back of said Union Shop Card.
I also agree, that the Union Shop Cards is [sic] now, and shall remain the property of the Journeymen Barbers' International Union of America, and that it is loaned to me only during such time as the conditions imposed are fulfilled by me * * *
I also further agree, on demand, to peaceably allow, without interference on my part or others, any duly appointed representative of the International or Local Union to remove said Union Shop Card from any point of display * * *."
It would seem that each defendant thereby agreed to yield to the plaintiff the possession of the card for any cause. However we need not rest on this inference. Clause (d) of the Rules Governing Shop Cards (to which rules defendants agreed in the sentence first quoted above) confirms the point. The rules appear on the back of the cards as follows:
"The person or persons displaying this card do so in accordance with the rules stated below, and it is agreed, by the person or persons displaying this card, that for any violation of the rules below stated, he or they will give peaceable possession of the same to the local union under whose jurisdiction it is to be displayed, or a duly appointed or elected representative thereof; * * *

RULES GOVERNING UNION SHOP CARDS

* * * * * * * *
The contract, or agreement, called for by these laws shall be so construed that the person or persons displaying the Shop Card shall specifically agree:
*256 (a) To abide by the laws of the J.B.H.C.I.U. of A. governing Shop Cards and such laws as may be made in the future for the proper government of the same.
(b) To abide by the laws of the local union, now and in the future, with reference to prices, hours, wages, etc.
(c) To peaceably give up said Shop Card on demand of the local union or local executive board, through its duly appointed representative, for the violation of any local or International laws.
(d) To peaceably give up said Shop Card to the General President-Secretary-Treasurer, or a duly appointed representative, in case of the suspension or disbandment of the local union which issued it, or for any cause when called upon to do so." (Italics inserted)
We refer to clause (d) above. Not much attention has been given by counsel to the terms of that clause. However, we think it fairly clear that the plaintiff local is a "duly appointed representative" of the general president-secretary-treasurer within the intendment of the clause. Under Article VII, section 11 of the International's constitution this official is required to furnish, in blank, forms of agreement to be signed by the persons conducting the barber shop. Under the last sentence of the forms of agreement (as quoted above) which were signed by the defendants here, it appears that "any duly appointed representative of the * * * Local Union" is authorized to remove the shop card. It is to be implied therefore that the general president-secretary-treasurer constituted the local's representative as his representative for the purposes of clause (d); and a fortiori the local itself is his representative in this regard. Further, as to the authority of the local, see Article VII, section 2 of the International's constitution. So we conclude that clause (d) authorizes the plaintiff to recover the shop card "for any cause."
There is another point here, important to the plaintiff's case. The person displaying a shop card agrees to give it up if he violates any law of the International Union. See clause (c) of the Rules Governing Union Shop Cards, above quoted; see also the preliminary statement on the back of the card, reading it with clause (a). Among International's laws which are worthy of note is Article VII, section 3 of its constitution which provides:
*257 "Any shop recognized as a union shop by the laws and principles of our union shall be entitled to display said Shop Card."
Are the defendants' shops so recognized? The collective bargaining agreement between the local chapter of the Associated Master Barbers of New Jersey (to which chapter defendants belong) and the plaintiff union came to an end July 31, 1954, more than six months before this action was started. Negotiations for a new contract were unsuccessful, and no contract has been in effect since then. Can it be said under this state of affairs that defendants' shops are each "recognized as a union shop under the laws and principles of our union"? We think not. The International's constitution, Article VII, section 11, requires that copies of the working agreement, which fixes prices, wages, hours and working conditions, "shall be signed by the owner or operator signing the Shop Card agreement" (italics added) and put on file with the secretary of the local union. There was no such working agreement here.
On the basis of the foregoing points (among others), plaintiff claims it is entitled to recover the shop cards. Now we turn to defendants' principal argument, namely, that plaintiff is making use of the processes of the court for an illegal purpose, namely, in order to induce defendants to join the union.
Article VII, Section 5 of the International's constitution provides:
"No Shop Card shall be displayed in a barber or beauty shop unless all persons working in the shop with the tools of the trade are members of the union in good standing" (Italics added)
This provision, insofar as it refers only to the union, seems to be inaccurate. For the employer barbers are permitted to join either the union or (if they choose) an employers' guild established under the International's constitution. Thus, it is provided in Article VIII, Section 3 of the constitution:
"An employer * * * who works at the trade and who desires to operate a union shop must become an employer member of the local union or guild."
*258 The statement is made to us (we do not have a copy of the constitution as it existed prior to amendments made in September 1953, and hence have no means of checking the statement) that at the time of the decision of Simon v. Journeymen Barbers, etc., Union of America, Local No. 315, 11 N.J. 448 (1953), there was no provision in the constitution enabling employer barbers to join employers' guilds. (Incidentally in 1953 an amendment was made in Article VIII, section 5(9) giving employer barbers who join the union the right to vote and hold office; the obvious endeavor was to overcome the objections to the constitution set forth in the Simon case.)
The defendants say  and there can be no doubt about it  that the union's real objective here is to lay economic pressure upon them in order to induce them to join either a local union or a local employers' guild. Indeed the refusal of the Master Barbers Association to submit to this demand constituted the principal reason for the breakup of the negotiations for a new collective agreement, as above stated.
But the question is in what respects is this illegal?
We are not informed with any particularity as to the effect of these provisions seeking to bring employer barbers either into an employers' guild or a local union. If defendants should join an employers' guild, would they be prevented from bargaining freely as to hours, wages and working conditions? Indeed, prices too seem to be involved in such bargaining. Notwithstanding International's Constitution, Article XV, Section 5 (which provides that the local union by a two-thirds' vote shall regulate hours of labor, prices and wages), it would hardly seem that the employer barber in an employers' guild is eliminated from the bargain.
Quite aside from this matter of bargaining, there are other problems involved when a union attempts to unionize self-employers and have them contribute to the union. An employer-barber is in competition with journeymen barbers; and the union might urge that he could, for example, by staying open long hours, operate his shop to the detriment of union shops. Accordingly some courts have held that *259 attempts at unionization of the employer barber is a proper labor objective. Riviello v. Journeymen Barbers, etc., 88 Cal. App.2d 499, 199 P.2d 400, 403 (D. Ct. App. 1948); Coons v. Journeymen Barbers, etc., 222 Minn. 100, 23 N.W.2d 345 (Sup. Ct. 1946); Kerkemeyer v. Midkiff, Mo. App., 281 S.W.2d 516, 519 (Ct. App. 1955). However, other courts may reach another conclusion after weighing the policies involved. Thus, in International Brotherhood of Teamsters, etc., v. Hanke, 339 U.S. 470, 479, 480, 70 S.Ct. 773, 94 L.Ed. 995, 1004 (1950), Justice Frankfurter and three other members of the court held that a state may properly protect self-employers against picketing by a union. Further, see Outdoor Sports Corp. v. A.F. of L. Local 23132, 6 N.J. 217, 231 (1951); Simon v. Journeymen Barbers, etc., Union of America, Local No. 315, 11 N.J. 448 (1953); Saveall v. Demers, 322 Mass. 70, 76 N.E.2d 12, 2 A.L.R.2d 1190 (Sup. Ct. Jud. 1947). It might be noted that the Taft-Hartley Act, 29 U.S.C.A. 158(b) (4) (A), which applies only to interstate commerce and hence not to this case, declares it to be an unfair labor practice, inter alia, for a union to strike in order to require a self-employed person to join the union. The parties in no way refer to the matter of bargaining or to any of these problems. However as will appear, we do not feel we need resolve these matters here.
Defendants do moke a particular attack on two provisions of International's constitution, upon the ground that they are against public policy. One provision (Article XVII, Section 8) forbids any active member of the International to join a "dual" organization composed wholly or partly of employers or any organization that is construed to conflict with International's policies. Passing the question as to what is meant by a dual organization (on which no light seems to be thrown), one may ask whether this provision is designed to break up such organizations as the Associated Master Barbers Association of New Jersey? It may be so. In any case, defendants' point is that the provision is invalid under N.J.S.A. 34:12-5 (cf. Restatement of Torts § 793), which declares it to be contrary to public policy for any agreement *260 or undertaking to be entered into between employer and employee whereby either party promises not to join an organization of employers or employees. This presents a serious question. However the point was apparently not raised below, and there is nothing before us whatever to indicate that the union proposes to enforce this provision. In view of the testimony indicating apparently that it does not at present intend to enforce Art. VII, Sec. 3, we should not on this record allow our decision to turn on Art. XVII, Sec. 8.
Defendants lay some stress upon another clause in International's constitution (Art. XVIII, Sec. 1) subjecting a member to a fine if, among other things, he endeavors, through any one of several means, to prevent the passage of legislation endorsed by the International. This provision was referred to in the court below. Can a man validly bind himself not to oppose legislation contrary to his own interest? We do not know whether this provision is to be enforced by the union. But assume that it is and assume further that it is against public policy, a question still remains whether it is a minor provision of the constitution, which is separable from the other provisions thereof and which, if void, may nevertheless be ignored in deciding this case.
Furthermore defendants argue that a union of employers and employees would be a monopoly dictating prices and controlling the business conducted by barbers. However we are not informed as to the extent of such a monopoly or as to how it is to be achieved; There was no proof at all respecting the question in the court below. As will appear, we conclude we need not resolve either this question or the other questions raised above with respect to the plaintiff's allegedly illegal designs. Still it might be pointed out, in passing, that only in a plain case will the courts interfere because of a violation of public policy. Cf. Allen v. Commercial Casualty Insurance Co., 131 N.J.L. 475, 478 (E. & A. 1944).
Having surveyed defendants' arguments as to plaintiff's allegedly illegal designs, we come to the critical question. *261 The shop cards are emblems of the union's recommendation of the defendants. Why should not the union be permitted to withdraw its recommendation of an employer pursuant to his very agreement, even though the union has some ulterior design which, if effectuated in all its aspects, would be held void? This is not an attempt by workers, through striking, picketing, boycotting and the like, to voluntarily inflict some injury on defendants' businesses; in such a case the law may concern itself with the question whether the object of the action is improper. 4 Restatement of Torts § 775, also p. 93 et seq. Here the narrow question is whether a union may be permitted to withdraw economic benefits it has been conferring on defendants. Why should a shop which has no contract with a union be allowed to display a sign declaring that it is a Union Shop? If the union were attempting to invoke the processes of the law in order to perpetrate some illegal act directly, the situation would be different. But here we think that the alleged illegal conduct feared by the defendants has not been demonstrated to be so necessary and direct a consequence of the withdrawal of union recognition and the resultant economic pressures on the defendants as to warrant refusal of relief.
In support of our conclusion, reference may be made to Foutts v. Journeymen Barbers, etc., 155 Ohio St. 573, 99 N.E.2d 782 (Sup. Ct. 1951); Rainwater v. Trimble, 207 Ga. 306, 61 S.E.2d 420 (Sup. Ct. 1950); Head v. Local Union No. 83, Journeymen Barbers, 262 Ala. 84, 77 So.2d 363 (Sup. Ct. 1955); cf. Kerkemeyer v. Midkiff, Mo. App., 281 S.W.2d 516 (Ct. App. 1955); cf. Riviello v. Journeymen Barbers, etc., 88 Cal. App.2d 499, 199 P.2d 400 (D. Ct. App. 1948); Id., 109 Cal. App.2d 123, 240 P.2d 361 (D. Ct. App. 1952) (the International's constitution was amended subsequent to this decision). But see Di Leo v. Daneault, 329 Mass. 590, 109 N.E.2d 824 (Sup. Jud. Ct. 1953); Wisconsin Emp. Rel. Board v. Journeymen Barbers, etc., 256 Wis. 77, 39 N.W.2d 725 (Sup. Ct. 1949); Journeymen Barbers, etc. v. Industrial Commission, 128 Colo. *262 121, 260 P.2d 941, 42 A.L.R.2d 700 (Sup. Ct. 1953). See Annotation 42 A.L.R.2d 710 (1955).
The judgment below must therefore be reversed. Should the case be remanded to the county district court? The questions here are twofold: first, whether the cause was cognizable there in view of the fact that the issue involved not merely the possession of shop cards, but certain obligations and relationships between plaintiff and defendants; and second, whether the plaintiff was obliged to put in additional proofs in order to establish that the value of the cards did not exceed $1,000, the extent of the court's jurisdiction in this action.
The county district court has jurisdiction over replevin. N.J.S.A. 2A:6-34; 2A:18-63. A card or a tangible chose is the subject of replevin even though it represents obligations and symbolizes relationships. Barron v. Peoples Nat. Bank of Secaucus, 16 N.J. Super. 243, 246 (Cty. Ct. 1951); appeal dismissed 9 N.J. 249 (1952); Bachmann-Bechtel Brewing Co. v. Gehl, 154 App. Div. 849, 139 N.Y.S. 807, 810 (App. Div. 1913); 77 C.J.S., Replevin, § 10.
The shop cards are not worthless pieces of paper; they can be used by the plaintiff union at other shops, and hence have a small value to the plaintiff. But see Di Leo v. Daneault, 329 Mass. 590, 109 N.E.2d 824, 827 (Sup. Jud. Ct. 1952). The cards themselves (made of metal, with cardboard backing) were put into evidence and exhibited to us; and they constitute real evidence demonstrative of their own value to plaintiff  at least sufficiently demonstrative thereof to establish that the four cards are obviously worth less than $1,000 to it. Cf. Granato v. Howard Savings Institution, 120 N.J.L. 94, 96 (Sup. Ct. 1938).
We can surmise that the withdrawal of the cards from defendants' shops may have some value to the union insofar as it advances the union's ulterior objects here. But that is a speculative matter, neither established below, nor in any way referred to by the parties. However defendants do refer to the value of the cards to themselves by way of *263 good will; but no proof thereof was submitted or proffered, and we cannot take judicial notice of such value. In the absence of such proofs or offers of proof, we need not consider whether these items were a proper subject for consideration when determining the County District Court's jurisdiction in a replevin action. Suffice it here to hold that the proofs, so far as they go, establish that the action lay within the jurisdiction of the court. Cf. MacFarland v. Ludwig, 130 N.J.L. 155 (Sup. Ct. 1943); but cf. Fulop, 17 N.J. Practice 85; Crest Drug Store, Inc. v. Levine, 142 N.J. Eq. 652, 654 (E. & A. 1948); Clark v. Costello, 69 N.J.L. 234, 237 (E. & A. 1896).
It would be unfortunate if we had to send the case back to the County District Court to take evidence as to the value of the cards and then  if the cards were found to be worth more than $1,000  to transfer the case to the Superior Court, just for the purpose of entering a judgment on our mandate.
Reversed, with directions to enter judgment in the county district court for plaintiff.